PAUL L. PICARD & others *vs.* CITY OF WORCESTER.

Worcester.  September 23, 1958. — March 9, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Equity Jurisdiction,* Declaratory relief.  *Declaratory Judgment.  Equity Pleading and Practice,* Bill, Declaratory proceeding.

Averments in a bill in equity against a city by permanent members of the uniformed fire fighting force of the defendant seeking a declaratory decree relative to the "jurisdictional authority to establish hours of work" for the members of such force did not disclose the actual controversy with the defendant on which the suit was predicated and a demurrer to the bill was properly sustained. [647–648]

G. L. c. 231A confers no jurisdiction to determine the validity or possible effect of future acts of a municipal board. [648]

BILL IN EQUITY, filed in the Superior Court on January 2, 1957.

A demurrer was heard and sustained by *Warner, J.*

*John F. Killeen,* for the plaintiffs.

*Harry J. Meleski,* City Solicitor, for the defendant.

WILLIAMS, J.  This is a suit in equity brought under G. L. c. 231A against the city of Worcester seeking "a decree containing binding declarations relative to the jurisdictional authority to establish hours of work for permanent members

of the uniformed fire fighting force of [the] defendant."
The plaintiffs, five in number, allege in their bill that they
are members of this force and officers or members of Local
Union 1009, a voluntary association of fire fighters; that
they represent the membership of the union which consti-
tutes more than a majority of the city's uniformed fire
fighters; and that they bring this suit for the benefit of
this membership and all persons similarly employed who
"may wish to join hereunder."

Other allegations of the bill are as follows: After the ac-
ceptance by the city of G. L. c. 48, § 59, on November 4,
1919, for a period of approximately twenty-six years the
regularly scheduled hours of work for permanent, uniformed
fire fighters were established by statute "under the 'two
platoon' system." On or about September 26, 1944, the
mayor and city council accepted the provisions of G. L.
c. 48, § 58A, inserted by St. 1941, c. 638, effective January
1, 1945, "granting the exclusive authority to the board of
engineers of its municipal fire department to determine the
hours of duty of the permanent members of its uniformed
fire fighting force." At that time and thereafter appropri-
ations were contained in the successive municipal budgets
for the board of engineers. After the acceptance of § 58A
the board of engineers reduced the weekly hours of work
from eighty-four by establishing an "average seventy hour
week" for the permanent uniformed fire fighters of the city.
On or about December 31, 1949, the board established an
"average fifty-six hour week," money for the expense re-
sulting from this reduction of hours being appropriated
thereafter in successive municipal budgets. The board
"schedules a consecutive five day week or any five days of
a period of seven successive days, neither of which exceeds
an aggregate of forty hours weekly for certain of the perma-
nent, uniformed fire fighters . . . ." The city law depart-
ment has at various times ruled that the reduction of aver-
age weekly hours of work from seventy to fifty-six was illegal.
On October 25, 1956, the city solicitor advised the city coun-
cil "that it is the opinion of the law department that the

authority to establish a forty-eight hour work week for fire fighters is exclusively in the electorate by virtue of the provisions of G. L. c. 48, § 58B." On or about November 18, 1954, the city "accepted legislation providing for benefits for certain holidays, and the defendant has accepted rulings from its law department that hours scheduled by the board of engineers aggregating less than fifty-six hours, to wit, forty hours, were a nullity, and benefits were to be computed on one fifty-sixth of the weekly basic rate of pay, not one fortieth." "[T]he defendant has refused to pay such personnel assigned to a forty hour work week by the board of engineers . . . other than at the basis of one fifty-sixth of the basic weekly rate for each overtime hour worked." On or about January 10, 1956, the defendant accepted legislation providing for overtime benefits.

"[O]n or about June 15, 1956, c. 48, § 58C, reciting overtime benefits for such personnel was repealed and a similar overtime benefit was granted by the General Court for permanent, uniformed fire fighters based on mandate of weekly hours as the basis of compensation was substituted, and the defendant has refused to pay such personnel assigned to a forty hour work week by the board of engineers of the defendant's fire department other than at the basis of one fifty-sixth of the basic weekly rate for each overtime hour worked."

"[O]n or about July 10, 1956, on the premise that the jurisdiction for establishing hours of work for permanent, uniformed fire fighters is exclusively vested in said board of engineers, received the indorsement of the city council, after verbal ruling by the member of the law department present at such meeting that jurisdiction in establishing such hours was so vested in the board of engineers, to grant such fire fighters 'two days off in seven' effective on or about January 1, 1957."

"Thereafter and prior to January 1, 1957, said law department of the defendant further ruled that the exclusive authority vested in the board of engineers under the provisions of G. L. c. 48, § 58A, were limited to establishing

average weekly hours of work for permanent fire fighters in excess of forty-eight hours, and that a maximum average week of forty-eight hours was exclusively within the authority of the electorate in the manner provided by G. L. c. 48, § 58B."

"[A]s the result of acceptance of said ruling by the defendant the rights of the plaintiffs to secure a reduction of their average regularly scheduled hours of work to forty-eight hours weekly has been infringed."

"[A]s a result of such ruling by the law department of the defendant the status, rights and duties of the plaintiffs have been infringed and obscured and an actual controversy exists between the plaintiffs as well as other fire fighters of the defendant in reference to jurisdiction to establish hours of work for permanent uniformed fire fighters."

The city demurred to the bill averring that the plaintiffs are not proper parties to bring the bill; that the facts alleged are not sufficient to "warrant relief"; and that the allegations are vague and do not quote specifically or sufficiently set forth facts "to enable the defendant to be clearly informed of the claim or controversy." The demurrer was sustained and leave to amend the bill denied. The plaintiffs appealed from a final decree dismissing the bill.

We do not pause to consider whether the plaintiffs may maintain this suit in their alleged representative capacity, as we think the bill states no ground on which they are entitled to declaratory relief. There is no allegation that they are among the "certain of the . . . fire fighters" who are scheduled with a work week of forty hours and whose benefits are paid on a basis of one fifty-sixth of the basic weekly rate rather than on a basis of one fortieth. Nor are facts set forth from which their right to a reduction of hours to forty-eight can be found. See *Brown* v. *Neelon*, 335 Mass. 357, 361. It does not appear that § 58B, inserted by St. 1945, c. 413, § 1, which provides in language similar to that of § 58A for a reduction of weekly hours from seventy to forty-eight, has ever been accepted by the city.

We are unable to determine from the bill on what actual

controversy with the city the suit is predicated. See *School Comm. of Cambridge* v. *Superintendent of Schs. of Cambridge,* 320 Mass. 516, 518. None can properly be implied from the vague statement that as a result of the "acceptance" by the city of the ruling of the law department the right of the plaintiffs to a reduction of their hours to forty-eight has been infringed. It is not alleged that in pursuance of that ruling any action has been taken by the board. General Laws c. 231A confers no jurisdiction to determine the validity or possible effect of its future acts. *Municipal Light Commn. of Taunton* v. *Taunton,* 323 Mass. 79, 85.

*Decree affirmed.*