Whitehead, J.
Plaintiffs, James C. Emmert and Peter Luccisano, bring this action against defendants Faith United Methodist Church (“Church”) of Methuen and the Mayor of Methuen (“Mayor”), seeking a declaration that contemplated construction and maintenance by defendant and others of certain recreational facilities on property owned by the Church is unlawful, and an injunction against the proposed construction. Plaintiffs are abutters to the Church’s property.
Count I of the complaint asserts that the proposed construction will cause run-off adversely affecting the use of plaintiffs’ land. Count II asserts that the proposed construction and maintenance of the recrea *581 tional facility violates the Establishment Clause of the First Amendment to the United States Constitution. Count III, asserting procedural irregularities in the manner in which the Town became involved in the project, has been waived in open court.
Defendant Church moves to dismiss Counts I and II. Defendant Mayor moves for summary judgment on Count II. Because the Mayor and the Church stand in privity with each other on the claims presented, a ruling for or against one of them on either of the motions will effectively be a ruling for or against the other with respect to issues raised by that motion. Accordingly, the Court will view the case as though both defendants had filed motions to dismiss and motions for summary judgment as to Counts I and II. With the case being in that posture, the Court dismisses Count I and grants summary judgment in favor of the defendants on Count II. The Court’s reasons are set forth below.
BACKGROUND
By deed dated July 21, 1995, the Church purchased a parcel of real property in Methuen which abuts plaintiffs’ property. On November 20, 1995, the Methuen Town Council approved a memorandum of understanding (“MOU”) between the Church, a private entity known as the West End Community Playground Committee (“Committee”), and the Mayor, regarding the construction of a youth recreational facility (“facility”) including a playground, tot play area and amphitheater on the parcel.
A few months later, in February 1996, the Church purchased a second parcel adjacent to the first, giving the Church a total of 29 acres. On October 25, 1996, plaintiffs filed this action. Two months later, the Methuen Town Council approved a successor MOU which expanded the scope of the proposed facility to include soccer fields. Overall, the second MOU provides, in pertinent part:
1) The [Church] hereby consents to the Town of Methuen to utilize the premises ... as a playground.
2) The Town agrees to utilize said premises as a playground.
3) The West End Community Playground Committee, Inc., agrees to construct on a portion of said consented land, at their own cost, a playground area, tot play area and walking track.
4) The Methuen Youth Soccer Association agrees, borne at their own cost, to construct two full-sized soccer fields and two junior soccer fields.
5) The soccer fields and playground areas shall be located, approximately, as provided for on the attached plan . . . [I]f necessary in the determination of the [Church], a gate barrier shall be utilized to keep people out of the playground and soccer field areas after hours.
6) Excepting for use by the [Church], which shall not require a permit, the above described soccer area shall be used only by the Methuen Youth Soccer Association with a permit issued by the Recreation Director of the Town of Methuen and said field and play areas shall be subject to standard Town field and playground regulations. Nor shall any public soccer games be played after dark on said fields. Further, no use will be made of the tot lot and playground areas or the soccer fields, except by the [Church], before 1:00 P.M. on Sundays.
7) [The Church], however, reserves the right to modify or negate any permit that interferes with Church activities and further reserves the right, for its congregation or otherwise sponsored activity, to use the soccer fields. However, it is the understanding of the Church that the normal soccer usage by the [Association] would be the periods April 1st to July 1st and August 15th to November 15th.
8) [Omitted]
9) The Town of Methuen hereby agrees to assume summer maintenance of the tot lot and playground areas, as well as year round control thereof for the recreation facility.
Thus, in general terms, the Church agrees to provide the property, the Committee and Association agree to construct the recreation facility, and the Town agrees to maintain and control it.
DISCUSSION
I. Count I
In Count I, plaintiffs claim that construction of the facility will result in increased water run-off onto plaintiffs’ land, and they therefore seek to enjoin the construction. Defendant church contends that Count I fails to state a claim upon which relief can be granted, since the Church has not yet allowed construction of the facility to begin or even settled on a final design for the facility. Plaintiffs respond that their action “is in the nature of a declaratory judgment, the purpose of which is to determine the impact that the defendants’ proposed development of the subject property will have upon the property of the plaintiffs.” Even though plaintiffs’ complaint speaks of enjoining defendants or, alternatively, recovering damages, the court will assume that it is also an action for declaratory judgment. G.L.c. 231A, §1 etseq.
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well pleaded factual allegations of the complaint, as well as any inferences which can be drawn therefrom in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. “[The] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in *582 support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977).
The purpose of the Declaratory Judgment Act, G.L.c. 231 A, is “to afford relief from . . . uncertainty and insecurity with respect to rights, duties, statutes and other legal relations.” Mass. Assn. of Ind. Ins. Agents and Brokers v. Comm’ r of Ins., 373 Mass. 290, 292 (1977), citing G.L.c. 231A, §9. In order for the court to entertain a petition for declaratory relief, there must be an “actual controversy” apparent from the pleadings, and plaintiff must demonstrate the requisite legal standing to “secure its resolution.” Id. Declaratory judgment proceedings “are concerned with the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties.” Id. A controversy in the abstract is not enough; plaintiffs must “be one[s], who, by virtue of a legally cognizable injury, [are] entitled to initiate judicial resolution of the controversy.” Id at 293. “Conclusory allegations as to . . . potential futrare conflicts," in the complaint, are insufficient to show a controversy. Boston Herald, Inc. v. Superior Court Dep’t of the Trial Court, 421 Mass. 502, 504 (1995). Further, a complaint for declaratory relief must provide “clear allegations of specific facts to state a case for any relief or to show that any real controversy exists.” Penal Inst. Comm’r v. Comm’r of Correction, 382 Mass. 527, 531 (1981) (Complaint properly dismissed since it contained only conclusory allegations, unsupported by specific facts, as to a future conflict). A complaint which is “studded with conclusions of law and lacking . . . that factual presentation necessary to substantiate the [claim] does not meet the requirements of the declaratory judgment law.” Cary Realty Corp. v. Chelsea, 345 Mass. 769 (1963) (Abutter sought declaratory relief that the Chelsea board of alderman’s order authorizing the execution of a deed was “illegal and invalid”; demurrer sustained, since abutter failed to support his allegations that he had made a larger offer for the parcel and that board’s action violated city ordinances). See also Sarceno v. Peabody, 361 Mass. 696, 702 (1972) (Declaratory judgment inappropriate where plaintiffs’ allegations concerning city’s sale of bonds consisted of “vague, general and unsupported allegations, amounting at most to mere conclusions . . . that [the city] denied [plaintiffs] due process of law”); Backman v. Commonwealth, 1 Mass.App.Ct. 851 (1973) (Bill failed to “state concisely and with substantial certainty facts entitling the plaintiffs to declaratory relief;” demurrer sustained).
Here, plaintiffs assert, in conclusory fashion, that construction of the facility will “substantially and adversely” affect their land due to increased water run-off. However, plaintiffs’ pleadings fail to provide “clear allegations of specific facts,” Penal Inst. Comm’r, supra at 531, to support their claim. This is understandable, since the Committee and the Association have yet to settle on a definite building plan, much less begin construction. Further, even going beyond the pleadings and considering plaintiffs’ affidavits, as if at summary judgment, plaintiffs fail to show specifically how construction of the facility would aggravate the alleged water run-off problem. The affidavits of plaintiff James C. Emmert, and John Wilkens (formerly of the Methuen Conservation Commission), while giving firsthand observations of present surface water problems, provide no more than speculation as to how construction of the facility might make the alleged problem worse. Therefore, there is no “actual controversy” apparent from the pleadings but rather “hypothetical” allegations about “potential future conflicts.” Boston Herald, Inc., supra at 504.
Moreover, to the extent plaintiffs claim that any improvement of the land will adversely affect their land, their complaint still fails, since it provides no factual clue as to how or why any improvement would increase water run-off. In sum, plaintiffs’ complaint “lack[s] that factual presentation necessary to substantiate” their claim for declaratory relief. Cary Realty Corp., 345 Mass. at 769. Therefore, the motion to dismiss Count I is allowed.
II. Count II
In Count II, plaintiffs assert that the agreement between the Church, the Mayor and the Association, as outlined in the second MOU, violates the Establishment Clause of the First Amendment to the U.S. Constitution. In response to the Mayor’s motion for summary judgment, plaintiffs argue that there are genuine factual issues concerning the “burden on the sovereign,” the nature of the “institutions benefitted,” and the possibility of future political action by a religious group.
The court -will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue, either by submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Here the relevant facts are undisputed. The second MOU describes the duties and obligations of the parties thereto, particularly the Town’s obliga *583 tions, which give rise to plaintiffs’ Establishment Clause claim in Count II.
Despite recent criticism,[3] the controlling Establishment Clause case is Lemon v. Kurtzman, 403 U.S. 602 (1971). In Lemon, the Supreme Court outlined a three-part test which must be met if state action is to conform with the Establishment Clause: first, the action must have a secular purpose; second, the primary effect of the action must not be to advance or inhibit religion; and third, the action must not result in excessive entanglement between the state and a religious organization. Id at 612-13. The court in Lemon held that a program of state subsidies to religious schools, given on the condition that they not be used to advance a religious purpose, violated the Establishment Clause, in that it led to excessive entanglement of church and state by virtue of the state’s having to oversee the allocation and use of the subsidies. Id at 614-15.
Here, plaintiffs’ argument focuses on the second and third parts of the Lemon test.[4] With regard the second part, whether the primary effect of the state action advances or inhibits religion — when there is “no realistic danger that the community [will] think that the [state is] endorsing religion or any particular creed, and any benefit to religion or to the Church [is] no more than incidental,” there is no Establishment Clause violation. Lamb's Chapel v. Center Moriches School Dist., 508 U.S. 384, 396 (1993) (Private religious group allowed to use a public school’s facilities to show films after hours). See also Zobrest v. Catalina Foothills School Dist., 509 U.S. 1, 8 (1993) (“[G]overnment programs that neutrally provide benefits to a broad class of citizens defined without reference to religion are not readily subject to an Establishment Clause challenge just because sectarian institutions may also receive an attenuated financial benefit”); Taunton Eastern Little League v. Taunton, 389 Mass. 719, 725 (1983) (Town’s action, while “clearly resulting in an indirect benefit to a religion,” did not have primary effect of advancing religion; benefit was incidental to a primary secular purpose).
This court finds, as a matter of law, that any promotion of religion or benefit to the Church resulting from the Town’s involvement in the facility would be incidental. The undisputed facts show that the facility primarily would benefit the Town rather than the Church. While the Church may benefit at some point in the future (when the MOU expires), insofar as it will have a cleared plot of land, this benefit flows mainly from the actions of the Association and the Committee, which will construct the facility, as opposed to the Town, which will merely control and maintain it. Moreover, when weighed against the immediate benefit to the Town, this remote benefit to the Church is minimal.
The court does note that, by way of the MOU, the Church reserves the facility for itself on Sunday mornings and reserves its right to have access to the soccer fields (without obtaining a permit) if needed. However, such concessions to owners of property in which others have been granted a right of use are neither unusual nor unreasonable. This is particularly so where, as here, no compensation is paid to the property owner for the right of use.
Ultimately, by yielding exclusive use of its property, the Church has given up much, and it has received little in return. Overall, there is “no realistic danger that the community would think that the [Town] was endorsing religion or any particular creed” by its maintenance of a secular recreation facility on church property, which facility will be open to all persons without reference to religion. Lamb’s Chapel, 508 U.S. at 396.
As to the third part of the Lemon test, plaintiffs fail to explain how maintaining and controlling the facility would result in excessive entanglement between the Town and the Church. The Town’s main involvement— maintenance and control of the facility — is a far ciy from the state involvement held unconstitutional in Lemon and its progeny. The Town’s involvement will not require oversight to avoid promoting religion as in Lemon. Soccer fields and playgrounds do not have a “substantial religious character,” Lemon, 403 U.S. at 616, and there is little or no risk that the children’s secular recreational activities will require State monitoring to prevent promoting religion, their location on Church properly notwithstanding. Lastly, given that the facility will not be restricted to certain religious groups, it is difficult to see how the state’s involvement with the facility could create political divisiveness along religious lines. See Lemon, 403 U.S. at 622-25. Thus, the Lemon test having been satisfied, the action proposed by the defendants gives rise to no Establishment Clause violation.
ORDER
For the above reasons, Count I is DISMISSED as against both defendants, without prejudice to plaintiffs’ commencement of a new action at such time as an actual a case or controversy is presented. Summary judgment is ALLOWED on Count II in favor of both defendants. Count III, having been waived in open Court, is DISMISSED.
Justice of the Superior Court

See, e.g., Lamb's Chapel v. Center Moriches School Dist., 508 U.S. 384, 397-01 (1993) (Scalia, J., concurring).

Plaintiffs do not argue that defendants’ purpose is religious. Moreover, it is clear that defendants’ purpose is secular: to provide playgrounds and soccer fields for Methuen’s children. Therefore the court does not address the first part of the Lemon test.