UNITED STATES of America, Appellee,

v.

Louis HALLER, Defendant,

The Ithaca Journal,
Intervenor–Appellant.

No. 313, Docket 87–1284.

United States Court of Appeals,
Second Circuit.

Argued Nov. 23, 1987.
Decided Jan. 15, 1988.

William S. Brandt, Rochester, N.Y. (Andrew C. Rose, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., of counsel), for intervenor-appellant.

Michael A. Battle, Asst. U.S. Atty., W.D. N.Y., Buffalo, N.Y. (Roger P. Williams, U.S. Atty., W.D.N.Y., Buffalo, N.Y., of counsel), for appellee.

Before WINTER and MAHONEY, Circuit Judges, and STEWART, District Judge.*

WINTER, Circuit Judge:

The *Ithaca Journal* appeals from two orders entered by Judge Telesca sealing a plea agreement. The first order denied the *Journal* access to the entire plea agreement, while the second denied access only to a paragraph of that agreement. We vacate the first order because it did not comply with the procedural and substantive requirements of the first amendment, and affirm the second order because the redacted portion of the agreement contained confidential matters involving a grand jury proceeding and an ongoing criminal investigation.

* The Hon. Charles E. Stewart, Jr., United States District Judge for the Southern District of New York, sitting by designation.

## BACKGROUND

We briefly summarize the relevant facts. On April 3, 1987, Louis Haller, the business agent for Local 109 of the Plumbers and Pipefitters Union in Ithaca, New York, pled guilty to embezzlement of union funds in violation of 29 U.S.C. § 501(c) (1982). That same day, a three-page plea agreement was filed as a publicly available document in the district court. Because the *Journal* had published a news story on Haller's indictment in June 1986, his difficulties with the law were a matter of public interest. On April 14, 1987, after being informed that Haller was denying that he had pled guilty to embezzlement, a *Journal* reporter contacted an Assistant United States Attorney ("AUSA"), who explained Haller's plea. However, the AUSA refused to provide the reporter with a copy of the plea agreement on the ground that it contained "sensitive" information. After learning that a second *Journal* reporter was attempting to obtain a copy of the agreement, the AUSA telephoned the district court clerk's office and requested that the agreement be sealed. This request was apparently granted, for the reporter was denied access to the agreement, although the district court's docket contains no entry of an order sealing the agreement on April 14. Judge Telesca, however, entered a written order sealing the agreement the next day.

The *Journal* then moved to intervene and to unseal the plea agreement. The government opposed the motion to unseal on the ground that unsealing would "bring to light information that will be presented to a United States Grand Jury" and would compromise an ongoing investigation. At oral argument, during a colloquy concerning the government's failure to provide public notice of its intention to seal the agreement, the district court stated that "[t]he idea of giving notice to the public before you seal [a plea agreement] is a notion of Camelot I think. How do you pragmatically accomplish that?" The district court then ruled that paragraph four

of the agreement contained "sensitive" material and would remain sealed. The remaining portions of the agreement were unsealed. The district court did not make specific findings because he believed such findings would "immediately let the cat out of the bag." He stated, however, that "[t]he best record possible is for anybody to read the unredacted portion; compare it with my conclusions and findings, and it will be explanatory." Six weeks after the May 7 order and two weeks after the *Journal* filed its notice of appeal, paragraph four was unsealed by the district court upon application of the AUSA. Paragraph four provided that:

> 4. Defendant will cooperate with the government by providing complete and truthful information regarding his knowledge of criminal activity having to do with labor organization officers or employees in conjunction with employment practices at the Nine Mile Two Nuclear Power Plant in Oswego, New York. Defendant will be required to testify truthfully and completely before a Grand Jury and at such pretrial and trial proceedings as the government may deem necessary.

## DISCUSSION

We have appellate jurisdiction under the "collateral order" doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), because an order of closure "is a final decision as to an intervenor." *In re Herald Co.*, 734 F.2d 93, 96 (2d Cir.1984). We also note that although the relief that the *Journal* sought below—an unredacted copy of Haller's plea agreement—has al-

ready been granted, we conclude that this action continues to be a live controversy because it is "capable of repetition, yet evading review." As in *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 2739, 92 L.Ed.2d 1 (1986) ("*Press–Enterprise II*"), and *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982), "it can reasonably be assumed" that the *Journal* will someday be subjected to another order similar to those of April 15 and May 7, and that this order will likely evade review.[1]

Our decision on the merits is governed by *In re Herald.* In that decision, we recognized that the first amendment guarantees the public some right of access to pretrial suppression hearings, 734 F.2d at 99, and that vindication of this right requires that designated procedural steps be followed in order to give some form of public notice and an opportunity to be heard. *Id.* at 102. In the instant case, we must first determine whether a right of access to plea agreements exists, and, if so, whether the district court's closure orders of April 15 and May 7 complied with the substantive and procedural requirements of the first amendment.

■ As to the first issue, we conclude there is a right of access to plea hearings and to plea agreements. *See In re Washington Post*, 807 F.2d 383, 389 (4th Cir. 1986). Plea hearings have typically been open to the public, and such access, as in the case of criminal trials, *see Globe Newspaper*, 457 U.S. at 605–06, 102 S.Ct. at 2619–20 (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569, 100 S.Ct. 2814, 2823, 65 L.Ed.2d 973 (1980) (plu-

---

1. We also address sua sponte the *Journal*'s failure to specify in its notice of appeal that it was appealing from the April 15 order as well as the May 7 order. We have recognized:

   > The requirement of Fed.R.App.P. 3(c) that the notice of appeal "shall designate the judgment, order or part thereof appealed from" serves as "a means of identification not as a step in appellate pleading." Thus "a mistake in designating the judgment appealed from is not invariably fatal as long as the intent to appeal from a specific judgment can be fairly inferred."

   *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 693 (2d Cir.1983) (citations omitted); *see also* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.18 (2d ed. 1987) (courts have "consistently given a liberal interpretation" to Rule 3(c)). In this case, the *Journal*'s intent to appeal both orders can be fairly inferred, and the government has not been prejudiced by this mistake inasmuch as it argued the merits of both orders in its brief.

rality opinion)), serves to allow public scrutiny of the conduct of courts and prosecutors. Moreover, the taking of a plea is the most common form of adjudication of criminal litigation. *See Brady v. United States,* 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970) (well over three-fourths of criminal convictions rest on guilty pleas). Accordingly, the qualified first amendment right of access extends to plea hearings and thus to documents filed in connection with those hearings. *See In re New York Times Co.,* 828 F.2d 110, 114 (2d Cir.1987) (qualified right of access extends to documents filed in connection with pretrial motion to suppress).

We turn now to the April 15 order. The government concedes that it did not follow the precise procedures designated in *In re Herald.* It justifies this procedural lapse on the ground that the reporter's April 14 request for the plea agreement created an "emergency" and that it was not "pragmatically feasible" to provide notice without compromising the ongoing investigation. The district court seemed to agree when it observed that notice was "a notion of Camelot"—a remark intended, we trust, as an observation that this court is sometimes utopian, not that it is a musical comedy.

■ We believe the government and the district court greatly exaggerate the difficulty of complying with *In re Herald.*[2] That decision recognized that "notice requirements must remain sufficiently flexible to accommodate the exigencies of the litigation process and avoid unwarranted delays." 734 F.2d at 102. All that *In re Herald* requires is that except in extraordinary circumstances the public have a means of learning that a closure or sealing order has been proposed or issued. In the case of plea agreements, notice that the government has moved to seal the agreement should be promptly entered in the public docket files maintained by the district court clerk's office. *See id.* Leave of court may be sought to file the text of the motion to seal with the plea agreement

attached under seal pending a disposition of the motion by the district court. That disposition, and the making of requisite findings, need not be delayed so long as the district court subsequently allows interested parties to intervene and affords them a prompt hearing to contest its decision. The district court may of course continue the sealing of the motion papers in aid of an order sealing part or all of the plea agreement and may, where appropriate, put the contents of its decision under seal. In such a case, the fact that a sealing order had been entered must be docketed. The docketing of these matters may be delayed, however, in "extraordinary situations" when an individual might be at risk. *Id.* n. 7. Because the docketing of the decision gave effective notice to the public, the substance of *In re Herald's* procedural requirements was met by the April 15 order.

■ However, the district court failed to make any findings in support of the April 15 order before sealing the entire plea agreement. This was error. A district court must make "specific, on the record findings ... demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press–Enterprise II,* 106 S.Ct. at 2743 (quoting *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984); *see In re New York Times,* 828 F.2d at 116 (relying on *Press–Enterprise II* balancing test). As we pointed out in *In re Herald,* such findings may be made under seal when necessary. 734 F.2d at 100.

■ We now consider the May 7 order. The government contends, and we agree, that closure of paragraph four of Haller's plea agreement was essential to protect the secrecy of sensitive matters affecting a grand jury proceeding and an ongoing criminal investigation, and that such closure was narrowly tailored to serve those interests.

The Supreme Court has "recognized that the proper functioning of our grand jury

---

**2.** Certainly there was no excuse for the government's failing to move to seal the plea agreement before it was filed. The so-called "emergency" created by the reporter's interest was entirely the result of the government's own negligence.

system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). Among other things, if matters relating to grand jury proceedings became public, prospective witnesses may be deterred from testifying, those who do testify may be less likely to do so truthfully, targets of investigations may flee, and persons who are the subject of an ultimately meritless investigation may face public embarrassment. *See id.* at 219 & n. 10, 99 S.Ct. at 1673 & n. 10; *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 985–86 n. 6, 2 L.Ed.2d 1077 (1958). To guard against such consequences, Fed.R. Crim.P. 6(e)(2) provides for the nondisclosure of matters occurring before a grand jury. Moreover, Fed.R.Crim.P. 6(e)(5), which provides for the closure of hearings on "matters affecting a grand jury proceeding," was added in 1983 in order to:

> make it clear that certain hearings which would reveal matters which have previously occurred before a grand jury *or are likely to occur before a grand jury with respect to a pending or on-going investigation* must be conducted *in camera* in whole or in part in order to prevent public disclosure of such secret information.

Fed.R.Crim.P. 6(e)(5) advisory committee's note (emphasis added).

Paragraph four clearly concerned "matters affecting a grand jury proceeding," in that Haller agreed to testify before a grand jury "regarding his knowledge of criminal activity having to do with labor organization officers or employees in conjunction with employment practices at the Nine Mile Two Nuclear Power Plant." This testimony implicated the interests served by grand jury secrecy described *supra.* It also was a part of an ongoing criminal investigation that might be compromised or that might embarrass innocent parties if publicized. For example, public knowledge of Haller's cooperation might have alerted potential targets of that investigation or caused him to be reluctant about testifying. Moreover, public disclosure might have subjected the labor orga-

nization officers and employees, who although not specifically named were reasonably identifiable from paragraph four, to public embarrassment, even if they were later exonerated by the grand jury. *Cf. In re New York Times,* 828 F.2d at 115 (trial judge should consider privacy interests of innocent third parties before unsealing Title III material); *opinion after remand, In re New York Times,* 834 F.2d 1152 (2d Cir.1987) (per curiam). Protection of such privacy interests is especially important when the third parties under investigation may be unaware of the threatened danger to their interests and may not appear before the district court to protect themselves. We believe, therefore, that preservation of grand jury secrecy and the sensitivity of an ongoing criminal investigation were "higher values" justifying sealing and that redaction of paragraph four was "narrowly tailored to serve [those] interest[s]." *Press–Enterprise II,* 106 S.Ct. at 2743.

■ The *Journal* contends, however, that, as in the case of the April 15 order, the district court failed to make the requisite "specific, on the record findings" explaining the higher values justifying redaction of paragraph four of the plea agreement. Judge Telesca stated that the information contained in paragraph four was "sensitive," that he could not reasonably articulate the basis for closure in open court without "let[ting] the cat out of the bag," and that "[t]he best record possible is for anybody to read the unredacted portion; compare it with my conclusions and findings, and it will be explanatory."

In *In re Herald,* we stated that "[t]he trial judge must articulate the basis for any closure order, supplying sufficient basis for appellate review. If such articulation would itself reveal information entitled to remain confidential, the basis for closure may be set forth in a sealed portion of the record." 734 F.2d at 100; *see also In re New York Times,* 828 F.2d at 116 ("Broad and general findings by the trial court ... are not sufficient to justify closure."). Although the district court's view that the redacted paragraph speaks for itself is hardly a specific finding (much less the elegant explanation of a Knight of the

Round Table) and his apprehension over making such a finding in open court ignores *In re Herald*'s suggestion that the finding be put under seal, we can fairly infer from what he said that preservation of grand jury secrecy and protection of an ongoing criminal investigation were the basis for his order. We need not remand, therefore, because those considerations, as noted, are a sufficient basis to justify redaction.

For the foregoing reasons, we vacate the April 14 order and affirm the May 7 order.