The **OREGONIAN PUBLISHING COMPANY, Petitioners,**

v.

**UNITED STATES DISTRICT COURT FOR the DISTRICT OF OREGON, Respondent,**

**Frank Riley Wolsky and United States of America, Real Parties in Interest.**

No. 90–70275.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 23, 1990.

Decided Dec. 6, 1990.

Charles F. Hinkle, Stoel, Rives, Boley, Jones & Grey, Portland, Or., for petitioners.

Frank Noonan, U.S. Atty., Portland, Or., for respondent.

Stephen A. Houze, Portland, Or., for real parties in interest.

Before WALLACE, THOMPSON and FERNANDEZ, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The Oregonian Publishing Company ("The Oregonian") petitions this court for a writ of mandamus to obtain access to various documents relating to a plea agreement filed under seal in the district court. Frank Riley Wolsky is a real party in interest in opposition to the writ. The United States is a real party in interest in favor of the writ. We grant the petition and issue the writ.

## FACTS AND PROCEEDINGS

On March 29, 1989, Frank Riley Wolsky was indicted under 18 U.S.C. § 924(c) and 21 U.S.C. § 841(a)(1) for various federal drug and firearm offenses. His case attracted considerable media attention due to his age, his status as a high school student and the style in which he was alleged to be living at the time of his arrest. At the time he allegedly committed the crimes, Wolsky was an eighteen-year-old high school student. At the time of his arrest on January 18, 1989, he lived on his own in a fashionable condominium and owned three cars, several guns and a large amount of cash.

Pursuant to plea negotiations, Wolsky sought to enter a plea of guilty to two counts in the indictment: possession with the intent to distribute 500 grams or more of cocaine and carrying a firearm during and in relation to a drug trafficking crime. On December 5, 1989, the government and Wolsky entered into a plea agreement. The terms of the plea agreement were set forth in a letter from the government dated November 29, 1989. Wolsky filed, under seal, a motion to seal the plea agreement.

On January 2, 1990, The Oregonian and two of its reporters filed a motion to intervene for the purpose of opposing the motion to seal the plea agreement. Another newspaper, the Gresham Outlook, also filed a motion to intervene. The district court granted the motions to intervene and set argument on the motion to seal for January 19, 1990, the date set for Wolsky's plea. On January 8, 1990, Wolsky filed a memorandum in support of his motion to seal. The Oregonian and the Gresham Outlook each filed memoranda in opposi-

tion to Wolsky's motion. The government filed no memorandum but stated its opposition to Wolsky's motion to seal in a letter dated December 29, 1989.

At the January 19 hearing, Wolsky appeared and entered a guilty plea. After hearing argument on the motion to seal, the district court granted Wolsky's motion and ordered the plea agreement sealed. It also ordered certain portions of its opinion and order sealed.

The Oregonian then sought a writ of mandamus from this court directing the district court to unseal the plea agreement and related documents. The related documents included the memoranda filed by Wolsky under seal and the district court's findings in support of its order sealing the documents. We denied the mandamus petition without prejudice to the filing of a new petition after Wolsky's sentencing. Wolsky's sentencing occurred on March 26, 1990, but the plea agreement and related documents remained under seal. On April 2, 1990, The Oregonian filed in the district court a Motion to Unseal the Plea Agreement and for Related Relief. Wolsky filed an opposing memorandum stating that "none of the concerns previously submitted by the defendant to the court in support of his motion to seal have abated," and urged the court to deny The Oregonian's motion. The government filed no further memorandum.

At a hearing on April 12, 1990, the district court denied The Oregonian's motion, declined to state the reasons why the plea agreement was being maintained under seal and stated that it would issue a written order. On July 6, 1990, the district court issued its second written order. The district court's order referred to its partially sealed opinion of February 6, 1990 and stated that "no new information or insights were offered to indicate any change in circumstance." On June 14, 1990, The Oregonian filed with this court its second petition for writ of mandamus again asking that we direct the district court to unseal the plea agreement and related documents.

## STANDING

■ The press has standing to seek review by petition for writ of mandamus of orders denying access to judicial proceedings or documents. *Seattle Times Co. v. United States District Court*, 845 F.2d 1513, 1515 (9th Cir.1988) (citing *United States v. Brooklier*, 685 F.2d 1162, 1165 (9th Cir.1982)).

## PROPRIETY OF MANDAMUS RELIEF

### A. Standard of Review

■ Mandamus is an "extraordinary remedy" that should be invoked only in "exceptional circumstances." *Will v. United States*, 389 U.S. 90, 95–96, 88 S.Ct. 269, 273–74, 19 L.Ed.2d 305 (1967). The exceptional nature of writs of mandamus stems from the policy against piecemeal review underlying the final judgment rule. *Id.* at 96–97, 88 S.Ct. at 274; *Bauman v. United States District Court*, 557 F.2d 650, 653 & n. 4 (9th Cir.1977). This policy applies with particular force in criminal proceedings due to the disruption interlocutory review may engender. *See United States v. Harper*, 729 F.2d 1216, 1221 (9th Cir.1984).

We have articulated the following guidelines for determining whether mandamus relief is appropriate in a given case:

1. whether the petitioner has no other adequate means, such as direct appeal, to obtain the requested relief;
2. whether the petitioner will be damaged or prejudiced in a way not correctable on appeal;
3. whether the district court's order is clearly erroneous as a matter of law;
4. whether the district court's order is an oft-repeated error or manifests a persistent disregard of the federal rules; and
5. whether the district court's order raises new and important problems or issues of first impression.

*Id.* at 1221–22; *Bauman*, 557 F.2d at 654–55. The guidelines are cumulative and a proper disposition requires a balancing of competing factors. *Harper*, 729 F.2d at 1222.

The Oregonian has established the presence of the first and second factors. We have held that the press lacks standing to bring a direct appeal and, therefore, must seek review of orders denying it access to judicial proceedings or documents by petition for writ of mandamus. *Seattle Times*, 845 F.2d at 1515 (citing *Sacramento Bee v. United States District Court*, 656 F.2d 477, 481 (9th Cir.1981), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 861 (1982)). Moreover, without immediate review, the press will face a serious injury to an important first amendment right. *Id.* The fifth factor is also satisfied because the issue of press access to plea agreements is one of first impression in this circuit. The fourth factor does not apply to this case: the district court has not exhibited an oft-repeated error or a manifest disregard for court rules. Thus, the key factor to be considered is whether the district court's order is clearly erroneous as a matter of law. *See Seattle Times*, 845 F.2d at 1515; *Levine v. United States District Court*, 764 F.2d 590, 594 (9th Cir. 1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986).

## B. Right of Access

■ Under the first amendment, the press and the public have a presumed right of access to court proceedings and documents. *See generally Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1985) (*Press-Enterprise I*). This presumed right can be overcome only by an overriding right or interest "based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* "The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* The question we consider is whether this presumed right of access under the first amendment should be extended to plea agreements and related documents in criminal cases.

The Supreme Court has established a two-part test for determining whether a first amendment right of access extends to a particular kind of hearing. First, we must decide whether the type of proceeding at issue has traditionally been conducted in an open fashion. Second, we must determine whether public access to the proceeding would serve as a curb on prosecutorial or judicial misconduct or would further the public's interest in understanding the criminal justice system. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–9, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 (1986) (*Press-Enterprise II*); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605–06, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982); *Brooklier*, 685 F.2d at 1167, 1170–71.

■ Applying the *Press-Enterprise II* test, we observe that plea agreements have typically been open to the public. Nothing has been provided to suggest historical practice is to the contrary. In many respects, the plea agreement takes the place of the criminal trial. *See Brady v. United States*, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970) (well over three-fourths of criminal convictions rest on guilty pleas). Just as there exists a first amendment right of access in the context of criminal trials, *Globe Newspaper Co. v. Superior Court*, 457 U.S. at 603, 102 S.Ct. at 2618 (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 558–81, 100 S.Ct. 2814, 2818–29, 65 L.Ed.2d 973 (1980) (plurality opinion)), it should exist in the context of the means by which most criminal prosecutions are resolved, the plea agreement.

Were we to hold that no right of access to plea agreements exists, we would effectively block the public's access to a significant segment of our criminal justice system. Openness in criminal proceedings "enhances both the basic fairness of the criminal [proceeding] and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise I*, 464 U.S. at 508, 104 S.Ct. at 823. We do well to remember that "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."

*Richmond Newspapers,* 448 U.S. at 572, 100 S.Ct. at 2825.

The existence of a qualified right of access to plea agreements and related documents has been recognized by other circuits. *See United States v. Haller,* 837 F.2d 84, 86 (2d Cir.1988) (right of access under first amendment; district court required to make findings in support of its order sealing entire plea agreement, but preservation of grand jury secrecy and sensitivity of ongoing criminal investigation justified sealing and redaction of one paragraph of plea agreement); *In re Washington Post Co.,* 807 F.2d 383, 390 (4th Cir. 1986) (right of access under first amendment; district court required to comply with procedural and substantive requirements for denying right of access to plea and sentencing hearings and documents filed in connection with those hearings). *See also United States v. Kooistra,* 796 F.2d 1390, 1391 (11th Cir.1986) (right of access under first amendment and common law; district court required to articulate its reasons for denying newspaper's motion to unseal plea agreement and other documents). We join these circuits and hold that the press and public have a qualified right of access to plea agreements and related documents under the first amendment.

We turn now to the district court's order denying access in this case.

C.  District Court's Order Denying Access

An order denying access to a plea agreement must satisfy both the procedural and substantive requirements of the first amendment. *See Haller,* 837 F.2d at 86.

We have articulated a two-part test to determine whether the procedural prerequisites to an order closing a criminal proceeding have been met: (1) those excluded from the proceeding must be afforded a reasonable opportunity to state their objections; and (2) the reasons supporting closure must be articulated in findings. *See Brooklier,* 685 F.2d at 1167–68; *In re Washington Post,* 807 F.2d at 390–91 (test applicable to sealed records of a plea hearing). An order of closure should include a

discussion of the interests at stake, the applicable constitutional principles and the reasons for rejecting alternatives, if any, to closure. *See Brooklier,* 685 F.2d at 1168.

It is clear in the present case that the district court complied with the applicable procedural requirements. The district court gave the interested parties ample notice that the plea agreement might be sealed. The district court allowed The Oregonian to intervene in the case and provided all parties the opportunity to submit written memoranda and to argue. The district court prepared a written order in which it chronicled the procedural history of the case, set forth its findings of fact, and discussed and applied the law. It is not compliance with the procedural requirements which raises a question in this case. The question is whether the substantive requirements for the closure order were met.

The Supreme Court has made clear that criminal proceedings and documents may be closed to the public without violating the first amendment only if three substantive requirements are satisfied: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest. *Press–Enterprise II,* 478 U.S. at 13–14, 106 S.Ct. at 2742–43 (test applied to accused's right to a fair trial). The court must not base its decision on conclusory assertions alone, but must make specific factual findings. *Id.* at 13–15, 106 S.Ct. at 2742–43.

In dealing with the first factor, the district court stated that both the government and the press had failed to show that anything would be gained by disclosure, and it therefore concluded that they had not met the burden set forth in [*United States v. Schlette,* 842 F.2d 1574 (9th Cir.), *modified* 854 F.2d 359 (1988) and *CBS, Inc. v. United States District Court,* 765 F.2d 823 (9th Cir.1985) ]. By so concluding, however, the district court imposed the initial burden on the wrong party. Consistent

with the presumed right of access to court proceedings and documents under the first amendment as articulated in *Press–Enterprise I*, the party seeking access is entitled to a presumption of entitlement to disclosure. It is the burden of the party seeking closure, here Wolsky, to present facts supporting closure and to demonstrate that available alternatives will not protect his rights. *See Brooklier*, 685 F.2d at 1167, 1169.

*Schlette* is not to the contrary. In *Schlette*, the press sought to obtain disclosure of a presentence report. The press based its request for access to the report on the first amendment and the common law ground that "disclosure [would] serve the public interest by informing the public about the sentencing process." *Schlette*, 842 F.2d at 1582. We stated: "Because we conclude that the public interest rationale supports disclosure given the unusual facts of this case, we do not reach the newspaper's first amendment argument." *Id.* & n. 4. In resolving the common law claim, we held that the press bore a threshold burden of showing that a compelling interest would be served by disclosure, a showing which we concluded the press had made. *Id.* at 1581–83.

■ Here, however, The Oregonian relies upon a qualified right of access under the first amendment to obtain disclosure of the plea agreement and related documents. Where the first amendment supplies the right of access, the party seeking access has the benefit of the presumption that disclosure should be made; the burden is upon the proponent of closure to justify a closure order. Thus, the district court erred by placing the initial burden to demonstrate a basis for disclosure on The Oregonian. The court should have required Wolsky to present facts supporting closure and to demonstrate that any available alternatives would not protect his interests.

■ Despite this error in allocating the burden of persuasion, the district court did consider whether disclosure of the plea agreement and related documents would pose a risk of harm to Wolsky and his family. The court concluded that, in the absence of closure, the safety of Wolsky and his family would be placed in jeopardy. This conclusion, however, was not supported by any factual finding. It was based upon the district court's stated belief that because the agreement contemplated Wolsky's cooperation with the government, Wolsky would be in danger if the court disclosed the terms of the plea agreement. There was no evidentiary support for this. In his memorandum in support of the motion to seal the plea agreement, Wolsky stated, "In the instant case, closure will serve 'higher values' beneficial to both the government and the defendant for reasons previously articulated in the defendant's previously sealed submissions." However, the only other document submitted in support of Wolsky's motion to seal was the letter from Wolsky's attorney to the district judge. This letter does not present facts demonstrating any danger to Wolsky or his family. Thus, Wolsky failed to carry his burden as articulated in *Brooklier*. *See Brooklier*, 685 F.2d at 1167, 1169.

We conclude that Wolsky has not overcome the presumption that the press has a right of access under the first amendment to the plea agreement and related documents.[1]

## CONCLUSION

The public and the press have a right of qualified access to plea agreement documents under the first amendment. A criminal defendant's interest in safety over-

---

1. The district court did not consider alternatives to closure that might protect Wolsky's interests. The district court simply concluded that "[t]here is no alternative to closure that would provide Wolsky and his family with equal protection."

The district court might have considered redacting portions of the plea agreement, or disclosing the agreement but placing Wolsky in a witness protection program, or recommending that Wolsky be placed in protective custody while in prison. We express no opinion on whether these possible alternatives would have been effective or appropriate. We do not address the question whether the district court should have considered alternatives to closure, because we conclude Wolsky did not make a sufficient showing to warrant closure or to obtain the benefits of alternatives to closure.

rides this right of access only when the three substantive requirements set out in *Press–Enterprise II* are met. The district court failed to apply these requirements properly and thus clearly erred as a matter of law in making its closure orders. Accordingly, we GRANT the petition for writ of mandamus and ORDER the district court to release the sealed documents.