**UNITED STATES of America, Plaintiff,**

v.

**Michael R. MILKEN, Defendant.**

**No. SS 89 Cr. 41 (KMW).**

United States District Court,
S.D. New York.

Nov. 26, 1991.

---

John K. Carroll, Asst. U.S. Atty., Otto G. Obermaier, U.S. Atty., New York City, for plaintiff.

Arthur L. Liman, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Defendant Michael R. Milken moved to seal an affidavit and portions of a memorandum in support of his Rule 35 motion to reduce his sentence. (October 16, 1991 Letter from Arthur J. Liman, Esq. to the Court, treated by the Court as a motion to seal [hereinafter "Liman Letter"].) At an October 17, 1991 hearing, the Government joined in defendant's motion to seal portions of both defendant's and the Government's moving papers. The Court heard arguments from various members of the press in opposition to the motion to seal. For the reasons stated below, the Court grants the motion in part and denies it in part.

## BACKGROUND

On April 24, 1990, defendant pled guilty to a six-count felony information charging him with conspiracy, securities fraud, mail

fraud, market manipulation, and tax fraud. *United States v. Michael Milken,* 759 F.Supp. 109, 110–11 (S.D.N.Y.1990). Before sentencing, defendant requested leniency on the ground that although he had not yet cooperated with the prosecutors, he intended to do so in the future. Rather than giving defendant credit for future, possible cooperation, the Court followed the traditional path of waiting until the cooperation had taken place before evaluating it. After conducting a Fatico hearing, the Court sentenced defendant to ten years in prison and three years probation.

Defendant was sentenced for crimes that took place before the Sentencing Guidelines became effective, and thus he was eligible to be released on parole after serving a period of time to be determined by the Parole Commission pursuant to their guidelines and other procedures. Defendant has now served over eight months of his prison term. During that time, the Parole Commission has considered when defendant will be released on parole. In August 1991 the National Commissioners of the Parole Commission rendered an initial decision that defendant will be paroled after 44 months. Assuming that defendant receives five months' *credit* for Superior Program Achievement for such activities as teaching, he would be paroled after serving 39 months, rather than 44 months. Defendant has appealed the National Commissioners' decision to the full Commission, which is expected to hear the appeal in December 1991. The Parole Commission did not consider whether defendant's period of incarceration should be shortened because of his cooperation.

Defendant's motion for a reduction in his sentence is based principally on his post-sentence cooperation with the Government. (Def.'s Mem. Rule 35, Redacted Pursuant to Court Order of 10/17/91, at 1 [hereinafter "Def. Mem."].) The Government responded by saying that it does not "formally oppose" reduction of the sentence (Transcript of October 17, 1991 Hearing, at 51, lines 3–4 [hereinafter "Tr."]), but stated in its affidavit that "Mr. Milken's cooperation has been of limited value to criminal investigations." (Gov.'s Response to Def.'s Mem. Rule 35, Redacted Pursuant to Court Order of 10/17/91, at 5 [hereinafter "Gov. Res."].) Both defendant and the Government submitted to Chambers redacted and unredacted versions of their motion papers, and defendant simultaneously moved to seal defendant's unredacted memorandum and an accompanying affidavit, which discuss the subject matter of defendant's interviews with the Government. (Liman Letter at 1). In compliance with the Court's instruction, the parties filed the redacted versions of their submissions with the clerk's office.

After advising the press of the motion to seal, the Court held a hearing on October 17, 1991, to hear argument relating to the motion to seal. The Government argued that the subject matter of defendant's interviews with the Government should remain confidential in the interest of protecting ongoing and future grand jury investigations and encouraging future cooperators to come forward. Defendant took the position that, with one exception, defendant sought sealing only to protect the Government's interests; the only exception was defendant's privacy interest in sealing a description of certain medical conditions relating to defendant's family.

Members of the press asserted a Constitutional right of access to the information regarding defendant's discussions with the Government. In particular, the press requested access to the name of the defendant's affiant, to information about conduct that could not be prosecuted because of the statute of limitations, to references to defendant's own criminal conduct, and to defendant's cooperation regarding his former employer, Drexel Burnham Lambert, Inc. Members of the press stated that any interest in confidentiality asserted by the parties was outweighed by the public's First Amendment right to be fully informed of the details of this prominent defendant's willingness or unwillingness to cooperate with the Government. The press also asserted the right of the public to this information in order to allow it to evaluate how well the Government is doing its job. Finally, the press pointed out that any indi-

vidual who cooperates with the Government has a reasonable expectation that he may be called upon to state that information publicly.

## DISCUSSION

### I.

█ The public has a First Amendment right of access to criminal proceedings. *See Press–Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984) (*"Press–Enterprise I"*). Judicial proceedings may be closed only upon a showing that closure is necessary to protect higher values and that the closure is narrowly tailored to the individual circumstances:

> The presumption of openness [in a criminal trial] may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press–Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 824.

The Second Circuit has adopted this standard. *See e.g., Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir.1987), *appeal after remand, Matter of New York Times*, 834 F.2d 1152 (2d Cir.), *appeal after remand, Matter of New York Times*, 837 F.2d 599 (2d Cir.), *cert. denied, Esposito v. New York Times Co.*, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988), *citing Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 13–14, 106 S.Ct. 2735, 2742–43, 92 L.Ed.2d 1 (1986) (*"Press–Enterprise II"*), *citing Press–Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 824. Although the Second Circuit has not addressed the issue of First Amendment protection in the context of a Rule 35 motion, it has applied a "qualified First Amendment right of access to ... motion papers" in criminal proceedings. *See New York Times*, 828 F.2d at 116. The Ninth Circuit has explicitly extended the right of access to Rule 35 proceedings, finding "no principled basis for affording

greater confidentiality to post-trial documents and proceedings than is given to pretrial matters." *CBS, Inc. v. United States Dist. Court*, 765 F.2d 823, 825 (9th Cir.1985).

The Second Circuit has also recognized, in the context of a plea agreement, that protecting the secrecy of ongoing criminal investigations is a "higher value" justifying some limitation of public access to criminal proceedings. *See United States v. Haller*, 837 F.2d 84, 88 (2d Cir.1988) (deeming the "preservation of grand jury secrecy and the sensitivity of an ongoing criminal investigation [to be] 'higher values' justifying sealing"). *See also In re Application of the Herald Co.*, 734 F.2d 93, 100 (2d Cir.1984) (stating that closure of a suppression hearing "should be invoked only upon a showing ... of danger to persons, property, or the integrity of significant activities entitled to confidentiality, such as ongoing undercover investigations or detection devices"). The Second Circuit has not ruled on the value of protecting ongoing criminal investigations in the Rule 35 context. The Ninth Circuit has recognized that information presented in a Rule 35 motion relating to cooperating witnesses and criminal investigations should be kept confidential in some cases. *CBS*, 765 F.2d at 826.

In addition, the Second Circuit has supported a defendant's interest in privacy regarding intimate matters, holding that "... the common law right of access is qualified by recognition of the privacy rights of the persons whose intimate relations may thereby be disclosed...." *In re Application of Newsday*, 895 F.2d 74, 79 (2d Cir. 1990), *cert. denied, Gardner v. Newsday, Inc.*, —— U.S. ——, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990).

Although the Second Circuit recognizes the government's interest in sealing information relating to ongoing criminal investigations and a defendant's interest in sealing information relating to intimate affairs, it requires the trial court to ensure that the limitation is tailored to the circumstances of the individual case. *See In re Herald*, 734 F.2d at 100 (requiring that closure or-

ders be "tailored to the circumstances of the perceived risk"). In particular, "the trial judge must consider alternatives" to closure. *Id.* For example, the trial judge should consider alternatives to "wholesale sealing of the papers" such as the "redaction of names and perhaps portions of the ... materials contained in the motion papers...." *New York Times,* 828 F.2d at 116. *See also CBS,* 765 F.2d at 826 (recommending as an alternative to creating a sealed written record the "excision from documents of names and transactions").

## II.

■ There were no objections to defendant's privacy-based request for sealing of material relating to the medical conditions of his family. That material will be maintained under seal. *See Newsday,* 895 F.2d at 79.

■ While some members of the press recognized a governmental interest in sealing some material regarding *ongoing* criminal investigations, they questioned the need for redactions as extensive as those initially proposed by the parties. The Court agrees that the original redactions were overbroad.

In light of the Second Circuit's holding that "the sensitivity of an ongoing criminal investigation [is a] 'higher value[ ]' " *Haller,* 837 F.2d at 88, this Court finds that certain redactions are warranted. These redactions must be narrowly tailored, in order to protect the public's right to information relating to the defendant's Rule 35 motion. The Court met with counsel for the parties *in camera* and asked the Government to articulate the connection between each redaction it requested and the risk of jeopardizing ongoing or future investigations. When the Government failed to establish that unsealing particular passages posed a risk to criminal investigations, the Court ordered that the passages be restored in newly submitted motion papers.

■ The principle guiding the Court's redactions is that the public should have access to *information as to the general na-ture and extent of defendant's cooperation,* if disclosure can be made without jeopardizing ongoing or future investigations, but *information that identifies the target, subject or status of a particular government investigation* must be redacted, so long as that information has not previously been publicly revealed.

With this principle in mind, the Court ordered the parties to resubmit their papers, restoring references to the following: the general nature of the information defendant provided, the amount of time he spent in cooperation, and the name of the affiant whose affidavit accompanies defendant's Memorandum. The following types of information shall, however, remain redacted: the targets and subjects of investigation, the status of the Government investigation, and any other information from which the targets, subjects or status of a government investigation might be inferred.

## III.

■ Although no member of the press asserted the right to have all of the submissions unsealed, the press urged that some information does not require protection. In particular, it argued that where the information is "stale," or concerns crimes for which the statute of limitations has run, the Government's interest in preserving secrecy is minimal. The Government responded that even if the statute of limitations has run on particular conduct with respect to which defendant furnished information, there may nevertheless be ongoing investigations of related conduct. Disclosure of defendant's cooperation could jeopardize those related investigations, according to the Government. Based on the Government's representations and my review of the redacted information, I conclude that revelation of even stale information referred to in the motion papers would imperil ongoing investigations.

■ The press also asserted that more information should be unsealed in order to permit the public to evaluate the efficacy with which the prosecution is doing its job. More generally, representatives of the me-

dia understandably maintain that the prosecution of defendant by the Government is a matter of considerable public importance, and that the public's access to information that bears on this matter is of great significance.

The Court recognizes the importance of these values; indeed, these values underlie the First Amendment right recognized in the *Press–Enterprise* line of cases. However, the Court must harmonize these values with the public interest in protecting ongoing investigations. This Court believes that, by revealing the general nature and extent of defendant's cooperation without revealing information identifying the particular individuals being investigated, it accommodates each of these goals. Defendant's prominence does not undercut the value of preserving ongoing government investigations.

The press also asserted that any individual who cooperates with prosecutors has a reasonable expectation that he will be called upon to state that information publicly, and thus that unsealing is unlikely to discourage future cooperation. The premise of this argument is questionable; cooperators do not invariably become witnesses in criminal trials. However, the more important point is that the basis for sealing in this case is *not* defendant's interest in the secrecy of his cooperation; it is the Government's interest in the secrecy of its ongoing investigations.

■ The press pointed out that the Government maintains that defendant's cooperation was of limited value, and the press argued that there must be a concommitantly limited need for secrecy. It is important to note that the Government has not claimed that defendant's cooperation was of no value. The Government concedes that Mr. Milken did contribute to some ongoing investigations. *See* Gov. Res. at ¶ 5, ¶ 7. The Government characterized his cooperation as having "limited value," rather than "no value." *See id.* at ¶ 10. Even if the Government were to maintain that his cooperation was of no value, it would not follow that there was no harm in unsealing information he provided to the prosecutor. If, for example, the reason that the information lacked value was that it was stale or duplicative, it would nonetheless be harmful to reveal the cooperation, if to do so would suggest that certain kinds of conduct are being investigated. In this case, the prosecutor stated that revelation of stale information provided by defendant would reveal the subject of related, ongoing investigations (Tr. at 8, lines 15–22).

## CONCLUSION

In light of defendant's privacy interest with respect to his family's medical conditions, all such information shall remain under seal. The Government has demonstrated a higher value in maintaining the secrecy of certain aspects of its discussions with defendant about ongoing and future criminal investigations and these shall remain sealed. All other information shall be made available to the public.

Mr. Milken's attorneys were ordered to resubmit their memorandum and the Government was ordered to resubmit its affidavit, each with the respective changes described above. The Court also ordered the parties to propose a restored version of defendant's supporting Affidavit that conforms with these guidelines.

SO ORDERED.