**UNITED STATES of America, Appellee,**

v.

**Marcus COJAB, Defendant–Appellee,**

**Asbury Park Press, Inc., Appellant.**

**No. 1714, Docket 93–1240.**

United States Court of Appeals, Second Circuit.

Argued May 17, 1993.

Decided June 23, 1993.

Richard P. O'Leary, New York City (Anthony Palmisano, Jr., Andrew O. Bunn, on the brief, McCarter & English, of counsel), for appellant Asbury Park Press, Inc.

Richard B. Zabel, Asst. U.S. Atty., New York City (Roger S. Hayes, U.S. Atty., John W. Auchincloss II, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellee U.S.

Lawrence Dubin, New York City (Goldberger & Dubin, P.C., of counsel), filed a brief under seal for appellee Marcus Cojab.

Before: VAN GRAAFEILAND, CARDAMONE, and ALTIMARI, Circuit Judges.

CARDAMONE, Circuit Judge:

Asbury Park Press, Inc. (Asbury Press or appellant) takes this expedited appeal from a March 25, 1993 order of the United States District Court for the Southern District of New York (Sprizzo, J.) denying its motion to open judicial proceedings to the press and public and to unseal court records in a pending criminal matter entitled *United States v. Marcus Cojab*, 92 Cr. 852 (JES).

Freedom of the press and public to attend criminal trials and pretrial proceedings, a right conferred by the First Amendment, is not designed to override the right of a defendant to receive a fair verdict from an impartial jury. To protect a defendant's Sixth Amendment right to a fair trial, a courtroom may be closed and its records sealed. The power to close a courtroom where proceedings are being conducted during the course of a criminal prosecution and/or to seal the records of those proceedings is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons. This record reveals those rare circumstances where a closure and sealing order appropriately was entered.

## BACKGROUND

Appellant is the owner and publisher of *The Asbury Park Press*, the primary daily newspaper in Monmouth and Ocean Counties, New Jersey. It asserts that on February 2, 1993 a pretrial hearing before Judge Sprizzo in the *Cojab* case was closed to the public and the hearing transcript sealed. So far as appellant is aware there was no public notice announcing that the government had moved to close the February 2 proceedings

and/or seal the record. Nor was Asbury Press—or any member of the public—given an opportunity to contest the closure.

Several news organizations covered the criminal investigation, arrest, and court proceedings involving the defendant Cojab. Asbury Press recites over 20 news stories published as early as November 30, 1990 and continuing to March 26, 1993 relating to a suspected drug ring murder in Asbury Park in which defendant supposedly was implicated. The news stories appeared for the most part in the *Newark Star–Ledger* and in appellant's *Asbury Park Press*. Appellant believes that to the extent the news articles are based on facts that have come into the public domain, no harm is likely to ensue from the disclosure of those same facts in the trial court's February 2, 1993 pretrial proceedings. Further, Asbury Press contends, with respect to the government's claimed need for secrecy because of a perceived threat to Cojab's safety, that the unsealing of the records and subsequent publication of news accounts would cause no more harm than the newspaper accounts already published.

The sealing order resulting from the matters heard on February 2 was docketed in the district court on March 2, 1993. On March 8 Asbury Press therefore filed a motion in that court to open the proceedings to the press and public and to unseal the records in the *Cojab* case in connection with the February 2 pretrial hearing before Judge Sprizzo. Cojab and the government opposed the motion, both filing memoranda under seal. After hearing oral argument, the district court denied Asbury Press' motion without prejudice on March 25, 1993, but the findings upon which it relied also were sealed. This appeal followed.

## DISCUSSION

■ We address first our jurisdiction over this non-final, intermediate order. We have jurisdiction of this appeal under the "collateral order" doctrine because the district court's order of closure was a final order as to appellant and determined claims of right separable from, and collateral to, rights asserted in the underlying criminal prosecution, "too important to be denied review and too inde-

pendent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). Moreover, it is particularly important that this Appellate Court publish an opinion in this sort of case, where a district court has taken the extraordinary judicial action of effectively making secret everything that has transpired before it.

### A. Substantive Law

1. *Openness in Criminal Proceedings.* Asbury Press contends that the district court committed procedural and substantive errors in sealing the records of the February 2 hearing and in denying Asbury Press' March 8 motion. Analysis begins with the substantive law. The Sixth Amendment declares that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." U.S. Const. amend. VI. This constitutional guarantee derives from the English common law. This cherished right, John Lilburne declared in 1649 during his trial for high treason, is "the first fundamental liberty" of a free people. By the laws of England, Lilburne continued,

> all courts of justice always ought to be free and open for all sorts of peaceable people to see, behold and hear, and have free access unto; and no man whatsoever ought to be tried in holes or corners, or in any place, where the gates are shut and barred, and guarded with armed men....

*Reprinted in IV Cobbett's Complete Collection of State Trials*, 1270, 1273 (T.B. Howell ed., 1809).

By Blackstone's time openness had become the rule. In the conduct of a jury trial, as he explained, "all this evidence is to be given in open court, in the presence of the parties, their attorneys, the counsel, and all by-standers; and before the judge and jury." 3 William Blackstone, *Commentaries* \*372. The reason for this, Blackstone continues, is that "[t]his open examination of witnesses *viva voce*, in the presence of all mankind, is much more conducive to the clearing up of

truth, than the private and secret examination taken down in writing before an officer, or his clerk, in the ecclesiastical courts, and all others that have borrowed their practice from the civil law." *Id.* at *373.

Openness in court proceedings not only gets to the truth more readily, but also results in all those connected with the trial—parties, counsel, witnesses, jurors and judges—performing their functions more conscientiously. *See Gannett Co. v. DePasquale,* 443 U.S. 368, 383, 99 S.Ct. 2898, 2907, 61 L.Ed.2d 608 (1979). Criminal proceedings conducted in secret have had from time immemorial an odious tinge that carries with it a scent of grave injustice reminiscent of the Spanish Inquisition and the English Star Chamber. In marked contrast to the openness in which the common law jury functioned, the Lords of the Star Chamber proceeded as inquisitors. A defendant's trial was based on charges made by persons whose identities were not disclosed, and he could be examined under torture, with the ultimate decision left to a court sitting without a jury. *See* Geoffrey Radcliffe and Geoffrey Cross, *The English Legal System* 107–08 (5th ed. 1971); 8 John H. Wigmore, *On Evidence* § 2250, at 282–84 (1961). Thus, the right accorded the press and the public to be present at a criminal trial is rooted in history and derived from English common law in response to the Star Chamber.

Yet under the common law there was no public right to attend pretrial hearings. *See Gannett,* 443 U.S. at 389, 99 S.Ct. at 2910. In that case the Supreme Court embraced the concept of balancing the rights of the press and public against the defendant's Sixth Amendment right to a fair trial, *id.* at 392, 99 S.Ct. at 2912, a trial untainted by the kind of prejudicial publicity that had occurred in the trial of Dr. Sam Sheppard in Cleveland, Ohio, and resulted in the reversal of his murder conviction. *See Sheppard v. Maxwell,* 384 U.S. 333, 363, 86 S.Ct. 1507, 1523, 16 L.Ed.2d 600 (1966). *Gannett* denied the press access to a pretrial hearing based on defendant's Sixth Amendment right. It viewed the defendant's right to a public trial as belonging exclusively to him. *See* 443 U.S. at 381, 99 S.Ct. at 2906.

A year after deciding *Gannett Co. v. DePasquale,* the Supreme Court for the first time adopted the common law notion of the openness of criminal trials that had served as the rule in England for centuries. The First Amendment conferred on the press and the public a constitutional right to be present at a trial, the court declared, absent an overriding interest carefully articulated by the trial court for closure. *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580–81, 100 S.Ct. 2814, 2829–30, 65 L.Ed.2d 973 (1980).

In addition to historical precedents, there are compelling functional reasons for assuring openness of criminal proceedings, both trial and pretrial. These include the victim's and the community's interest in seeing that offenders are brought to account, and the public's interest in knowing that fair standards are followed in the conduct of such proceedings and that variance from established norms will come to light. *See Press–Enterprise Co. v. Superior Court of Cal.,* 464 U.S. 501, 508–09, 104 S.Ct. 819, 823–24, 78 L.Ed.2d 629 (1984) *(Press–Enterprise I)* *(voir dire* examinations of potential jurors covered by guarantee of open public proceedings in criminal trials). In *Press–Enterprise Co. v. Superior Court of Cal.,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) *(Press–Enterprise II),* the Court ruled that the constitutional right to an open, public trial is one shared by the accused and the public and that the right to access attaches as well to pretrial proceedings. *See id.* at 7, 106 S.Ct. at 2739. The rationale undergirding such First Amendment right was found in the history of the English common law and the constructive function of the public's presence in criminal proceedings. *See id.* at 8–9, 106 S.Ct. at 2740–41.

■ Hence, it is now established that a qualified right of access applies not only to public trials, but also to pretrial hearings, such as the one before us in the instant case. *See United States v. Haller,* 837 F.2d 84, 86–87 (2d Cir.1988); *In re The Herald Co.,* 734 F.2d 93, 99 (2d Cir.1984). This right of access is the rule, and it is a rare and exceptional case where it does not apply. When the defendant and the government, as here,

seek the closure of the trial court and the sealing of its records, they must demonstrate that public and press access is likely to prejudice the guarantee of a fair trial, absent such extreme measures. *See Press–Enterprise II*, 478 U.S. at 7, 106 S.Ct. at 2739.

██ 2. *When Such Proceedings May Be Closed.* The presumption of openness is defeated only where the possible loss of that guarantee is supported by carefully articulated findings demonstrating that (1) closure is necessary to safeguard defendant's right to a fair trial, and (2) the order directing closure is narrowly drawn so as to serve that specific, identifiable interest. *See Press–Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 824. The trial court's findings must be such as to enable a reviewing court intelligently to determine whether under the circumstances the closure order was properly entered. *Id.* In addition to the significant risk that defendant's right to a fair trial will be denied, we have recognized as additional sufficient reasons for closure and sealing those occasions where an ongoing government investigation may be jeopardized or where publicity might put at risk the lives or safety of government agents engaged in undercover activities. *See In re Herald*, 734 F.2d at 100.

In discussing the need for maintaining the secrecy of grand jury proceedings, the Supreme Court has ruled that secrecy serves salutary purposes. Were some matters to become public, the Supreme Court instructs, prospective witnesses may refuse to testify, they may testify less truthfully, or the target of a grand jury investigation may disappear. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19 & n. 10, 99 S.Ct. 1667, 1672–73 & n. 10, 60 L.Ed.2d 156 (1979); *Haller*, 837 F.2d at 88.

The government and defendant Cojab strongly urge that closure of the hearing of February 2, 1993 falls within those reasons found sufficient for such drastic action. After a thorough and careful examination of the entire sealed record, we conclude that this is the rare case requiring closure for reasons overriding the constitutional rule of openness.

### B. *Procedure*

██ We turn now to the claimed procedural irregularities. Asbury Press insists that because the order excluding the public from the February 2, 1993 hearing was entered improperly it should be vacated.

Although a hearing may be closed and its records sealed, the public must be afforded notice in the public docket, "normally on the day the pertinent event occurs." *In re Herald*, 734 F.2d at 102. Notice that the February 2 hearing would be closed and its records sealed was not docketed until March 2. No extraordinary circumstances justifying such delay are present. *Id.* at 102 n. 7. Nor did the district court make any findings in support of its February 2 order to seal the *Cojab* records. This was error. *See Haller*, 837 F.2d at 87. *See also In re The New York Times Co.*, 828 F.2d 110, 116 (2d Cir.1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988). Further, the February 2 hearing took place in the trial judge's robing room, which the government at oral argument equated with open court. We need not tarry long on this point. Suffice it to say, a judge's robing room is not open court. As a consequence, the February 2 order of the district court sealing the *Cojab* hearing records was not decided in open court and it must be vacated. As a practical matter, however, this order was superseded by the March 25 order discussed next.

██ Asbury Press also challenges the district court's March 25 order denying its motion to unseal the *Cojab* records. Unlike the February 2 order, the district court's March 25 order was preceded by public notice, namely the March 2 docket entries. Asbury Press was accorded an opportunity to appear in court and argue the matter. Importantly, the March 25 order was supported by specific factual findings explaining the need for continued sealing of the *Cojab* records. A district court properly may make such findings under seal. *See In re Herald*, 734 F.2d at 100.

██ We carefully have reviewed the district court's findings in this case and agree that sealing the records "is essential to preserve higher values and is narrowly tailored

to serve that interest." *Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. at 824. The interest sought to be protected here is one that is recognized as compelling. *See United States v. Eastern Air Lines, Inc.,* 923 F.2d 241, 244 (2d Cir.1991). The district court further considered and properly rejected the feasibility of redaction. *In re New York Times,* 828 F.2d at 116. Moreover, the sealing order is not a permanent burden on the public's guaranteed right of access to a criminal proceeding because the district court explicitly limited the duration of its order and undertook to treat Asbury Press' motion as a continuing one for disclosure and unsealing.

### CONCLUSION

For the reasons stated, the March 25 order appealed from is therefore affirmed.