**UNITED STATES of America, Plaintiff,**

**v.**

**NORTHROP CORPORATION, et al., Defendants.**

**No. CR 89–303–PAR.**

United States District Court, C.D. California.

Aug. 7, 1990.

## MEMORANDUM OF DECISION AND ORDER

RYMER, Circuit Judge (sitting by designation).

The Los Angeles Times and the Wall Street Journal move to unseal an exhibit to Northrop's plea agreement that was filed under seal.[1] As part of the public, written plea agreement, the government agreed "not to prosecute, file criminal charges or seek indictments in the investigations listed on Exhibit B filed under seal with this Court."

---

1. Northrop was apprised of the request but has filed no papers and has not participated in the proceedings.

■ The Times argues that the press and public have a constitutional right of access to the documents filed in connection with a plea hearing.[2] It notes that public debate regarding the government's agreement with Northrop and Northrop's conduct in this case continues, and that Northrop has distributed corporate announcements which disclose matters listed in the sealed Exhibit. Finally, it urges that important public policy issues which are inherent in a criminal action against a major defense contractor justify unsealing the Exhibit in this case.

The government responds that under the *Richmond Newspapers* test, the public has no right of access to information relating to grand jury proceedings, and even if the public has such a right, it is outweighed by the need to preserve grand jury confidentiality.

The Times' argument is based on the Supreme Court's recognition of the importance of open criminal judicial proceedings. *See Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*) (striking down state law excluding public from some criminal preliminary hearings); *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press Enterprise I*) (holding criminal voir dire should be open to the public); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (striking down a state law excluding the public from the courtroom when minor

victims testified during sex-offense trials); *Richmond Newspapers v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (recognizing the public's right to attend a murder trial, even where the defendant requested closure).

■ To determine whether the right of access extends to a particular type of proceeding, or a particular document filed in connection with that proceeding, the Supreme Court has established a two-part test: (1) whether the proceeding has historically been open to the public, and (2) whether public access plays a particularly significant role in the functioning of the judicial process and the government as a whole. *See Globe Newspaper*, 457 U.S. at 605–606, 102 S.Ct. at 2619–2620; *Richmond Newspapers*, 448 U.S. at 569, 100 S.Ct. at 2823; *Seattle Times*, 845 F.2d at 1516.

■ In this case, the plea hearing and written plea agreement were public. References to specific investigations that the government agreed not to pursue, and statements that other investigations are ongoing and will not be declined, are contained in the Exhibit filed under seal. Therefore, assuming a right of access to the hearing, the question is whether that part of the plea agreement filed under seal, containing as it does references to investigations which may have been the subject of grand jury proceedings, is sufficiently protectible to overcome a presumption of access.[3]

---

**2.** The public and the press have identical access rights. "The First Amendment generally grants the press no right to information about a trial superior to that of the general public.... [A] reporter's constitutional rights [within the courthouse] are no greater than those of any other member of the public." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 609, 98 S.Ct. 1306, 1317, 55 L.Ed.2d 570 (1978) (quotations omitted) (quoting *Estes v. Texas*, 381 U.S. 532, 589, 85 S.Ct. 1628, 1663, 14 L.Ed.2d 543 (1965)).

**3.** Under the *Richmond Newspapers* test, the public clearly has no right of access to grand jury proceedings or materials. First, "traditionally, ... grand jury proceedings have been kept secret even though they are judicial proceedings closely related to the criminal fact finding pro-

cess." *Times–Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir.1989); *see also Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). Documents relating to those proceedings have also received protection. *See Associated Press v. United States Dist. Court*, 705 F.2d 1143, 1145 (9th Cir.1983). Second, public access does not play a significant role in the grand jury's function; in fact, it frustrates that function. *See Press–Enterprise II*, 478 U.S. at 8–9, 106 S.Ct. at 2740–41; *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674; *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 985–86 n. 6, 2 L.Ed.2d 1077 (1958). However, this analysis does not take into account the legitimate public interest in the plea hearing and the accompanying plea agreement.

In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978) the Court recognized "a general right to inspect and copy public records and documents, including judicial records and documents." However, the right is not unlimited; as the Court went on to state, "the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files.…" *Id.* at 598, 98 S.Ct. at 1312. *Nixon* involved a claim of a right to physical access to exhibits presented during a public trial, not a claim of a right to view documents filed under seal. *See In re Washington Post*, 807 F.2d 383 at 389 (4th Cir.1986) ("The Supreme Court has not yet addressed the question whether the First Amendment right of access also applies to written documents submitted in connection with judicial proceedings which themselves implicate the right of access.").

The Ninth Circuit has interpreted *Nixon* as upholding "a common law right of access to *most* pretrial documents," *Associated Press*, 705 F.2d at 1145 (emphasis added), "though not to some, such as transcripts of grand jury proceedings." *Id.* In *CBS* the Circuit recognized a "presumption that the public and the press have a right of access to criminal proceedings *and documents filed therein*." *CBS*, 765 F.2d at 825 (emphasis added) (citing *Associated Press*, 705 F.2d at 1145–46; *United States v. Brooklier*, 685 F.2d 1162, 1170 (9th Cir. 1982)); *see also Seattle Times v. United States Dist. Court*, 845 F.2d 1513, 1515 (9th Cir.1988); *United States v. Schlette*, 842 F.2d 1574, 1583 (9th Cir.1988) (pre-sentence report).

The presumption of public access can be overcome by "an over-riding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to preserve that interest." *Press–Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 824. The government asserts that the interest at stake in this case that outweighs the presumption of public access is the interest in protecting the secrecy of grand jury proceedings.[4]

Both the Supreme Court and the Ninth Circuit have recognized the importance of protecting grand jury secrecy. *Butterworth v. Smith*, —— U.S. ——, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990); *Press Enterprise II*, 478 U.S. at 9, 106 S.Ct. at 2740 (describing grand jury proceedings as a "government operation that would be totally frustrated if conducted openly."); *Douglas Oil*, 441 U.S. at 218, 99 S.Ct. at 1672 ("[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir.1989).

In *Procter & Gamble*, 356 U.S. at 681–82 n. 6, 78 S.Ct. at 986–87 n. 6, the Court listed several reasons justifying grand jury secrecy:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission· of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Id.*, cited in *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674, and *Times Mirror*, 873 F.2d at 1215.

The government argues that the material in Exhibit B implicates several of these reasons, and should therefore remain under seal. However, there is no indication on the face of Exhibit B that *any* of the items referred to were the subject of a grand jury proceeding, and it is clear on the face of the Exhibit that certain items do not implicate grand jury proceedings or grand

jury secrecy in any way. As to the latter items, the government agreed at oral argument that there is no cogent reason for not unsealing. These include: (1) Paragraph 1, redacted to eliminate references to pending investigations; (2) Paragraph 2, first sentence and items (b) and (j); (3) Paragraph 3; and (4) Paragraph 4.

To the extent that the remainder of Exhibit B may implicate grand jury proceedings, the government asserts that disclosure will reveal the identity of witnesses who have testified and may yet testify. *See Douglas Oil*, 441 U.S. at 219, 99 S.Ct. at 1673 ("[I]f pre-indictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily ..., witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements."); *U.S. v. Haller*, 837 F.2d 84, 88 (2nd Cir.1988) ("[I]f matters relating to grand jury proceedings became public prospective witnesses may be deterred from testifying, those who do testify may be less likely to do so truthfully...."). The government also argues that disclosure may adversely impact innocent individuals who are accused of illegal or fraudulent conduct, *see Douglas Oil*, 441 U.S. at 219, 99 S.Ct. at 1673; *Haller*, 837 F.2d at 88; and that because grand jury activities are on-going, secrecy is required to insure freedom in its deliberative process and to prevent subornation of perjury. *See Douglas Oil*, 441 U.S. at 219, 99 S.Ct. at 1673.

While these are valid concerns in general, they are not pertinent to every item on Exhibit B. The exhibit does not include "transcripts of grand jury testimony, votes of the jurors on substantive questions, and similar records." *See* Fed.R.Crim.P. 6(e)(2) (mandating secrecy of "matters occurring before the grand jury"); *In re Special Grand Jury*, 674 F.2d 778, 781 (9th Cir. 1982). Even though the secrecy requirement extends beyond "the four corners of Rule 6(e)," *see In re Special Grand Jury*, 674 F.2d at 781–82, the bare-bones listing of matters which have been investigated does not include such things as the identity of witnesses, or targets of investigation, which troubled the Court in *Douglas Oil*.[5] Neither witnesses nor targets are listed; nor can their names reasonably be gleaned from the references contained in Exhibit B. Indeed, which (if any) of the matters listed have been the subject of a grand jury proceeding cannot be ascertained. The government's interest in preventing subornation of perjury in this case is minimal, as—without in any way intending to suggest that this might happen—Northrop, the party with the strongest motive to suborn perjury or tamper with witnesses, already has access to Exhibit B. In addition, assuming that some of the items may have been the subject of a grand jury proceeding, once such proceedings have concluded, the need for secrecy decreases. *See Douglas Oil*, 441 U.S. at 223, 99 S.Ct. at 1675 ("[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."); *see also* Fed.R.Crim.P. 6(e)(6). Nor am I persuaded by the government's submissions that terminated proceedings and on-going proceedings are so closely connected that work on continuing investigations will be affected. In short, Exhibit B contains no details of the sort that seriously implicate grand jury secrecy or threaten the

---

**5.** Neither *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir.1987), nor *Securities and Exchange Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980), both of which the Times cites for the proposition that the cloak of secrecy is not impenetrable, is relevant to this argument. Both of those cases involved claims of access to materials which were presented to the grand jury. In *Dresser*, the court examined the *Douglas Oil* justifications for secrecy and determined that none of them was implicated when a different agency or entity subpoenaed documents which had been previously presented to the grand jury. 628 F.2d at 1382 n. 36. Similarly, in *Anaya*, the court found no secrecy concerns implicated in the release of an FBI memoranda, which had been presented to the grand jury, of interviews with a witness prior to that witness' appearance before the grand jury. 815 F.2d at 1380.

**1006**

integrity of grand jury proceedings.[6]

Set against these facts is the fact that this action is tinged with conspicuous public interest. Therefore, given the lessened interest in protectibility and the heightened interest in Northrop's conduct, unsealing is appropriate as to those matters on which the government declined prosecution and which formed some part of the consideration for the plea agreement. Because all of the *Douglas* factors come into play with respect to the pending investigations, there is good cause for confidentiality and the Times' interest in disclosure is not compelling.

Accordingly, it is hereby ORDERED:

(1) The following parts of Exhibit B to the Northrop plea agreement shall be unsealed and released: Paragraph 1, redacted to omit references to ongoing criminal investigations; Paragraph 2, redacted to omit references in subparagraph (1) to ongoing criminal investigations; Paragraph 3; and Paragraph 4.

(2) References to on-going criminal investigations shall remain under seal.

(3) Counsel for the government shall lodge an Exhibit B redacted in a form consistent with this Order, together with a proposed order unsealing that redacted exhibit.

---

**6.** 28 C.F.R. § 508, which provides that the Department of Justice is to refrain from disclosing investigative files for 15 years in response to requests under the Freedom of Information Act, 5 U.S.C. § 552, supports the government's argument but is not dispositive. Exhibit B has no details of the sort that an investigative file would disclose.