BOSTON HERALD, INC., & another[1] *vs.* SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT.

Suffolk. October 2, 1995. - December 12, 1995.

Present: LIACOS, C.J., ABRAMS, GREANEY, & FRIED, JJ.

*Moot Question. Practice, Civil,* Moot case, Declaratory proceeding. *Constitutional Law,* Public trial.

A complaint brought by a television station and a newspaper, seeking a
declaration (and injunctive relief) that the press could not constitution-
ally be excluded from an arraignment held in a hospital room on
account of the defendant's medical condition, did not state an actual
controversy where the matter was moot, inasmuch as the defendant had
been arraigned before the complaint was filed. [504]

Discussion of the public's right of access to judicial proceedings, the deriv-
ative right of the media to such access, and statement of the principles
governing closure of such proceedings. [505-507]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on September 22, 1994.

The case was heard by *Lynch*, J.

*Elizabeth A. Ritvo* (*Wayne F. Dennison* with her) for the
plaintiffs.

*Macy Lee*, Assistant Attorney General, for the defendant.

ABRAMS, J. Reporters employed by the plaintiffs were de-
nied access to the arraignment of David Clark in the inten-
sive care unit of Massachusetts General Hospital (MGH).
Subsequently, the plaintiffs filed a verified complaint with
the Supreme Judicial Court for Suffolk County (single jus-
tice session) seeking injunctive and declaratory relief, "that
when a judicial proceeding occurs in a non-courtroom set-
ting, the constitutional right of access, guaranteed to the

[1]Group W Television, Inc. (WBZ).

press in a courtroom setting, shall be guaranteed to the press in a non-courtroom setting; and . . . that it is unconstitutional to deny the press access to a judicial proceeding held in a non-courtroom setting unless the court (1) has given notice it intends to deny access, (2) it provides the press with an opportunity for a hearing on the issue of denying access, and (3) makes specific, written findings that there is a compelling and substantial interest justifying the denial of access to (a) a judicial proceeding, (b) a substantial probability that closure will be effective in protecting against the perceived harm to such compelling and substantial interest and (c) a substantial probability that alternatives to closure will not protect adequately the compelling and substantial interest [*sic*]." The single justice entered a declaration that the issue was "moot and . . . no actual controversy exists within the meaning of G. L. c. 231A, § 1 [1994 ed.]." The plaintiffs appeal. We affirm.

1. *Facts.* On September 7, 1994, David Clark, alleged to have killed a State trooper, was hospitalized with a bullet injury in the intensive care unit of MGH. Clark was scheduled to be arraigned that day in his hospital room. Representatives of the news media were informed that the arraignment judge would allow a "pool arrangement" whereby one reporter, one still camera operator, and one motion camera operator could attend the arraignment. Employees of the Herald and WBZ were the designated pool representatives. They gathered with other members of the press at the hospital's front entrance to await the judge's arrival. An MGH spokesperson informed them that arrangements might be made to hold the arraignment in a special room to accommodate the press.

The complaint[2] states that the judge entered the hospital from a side entrance and went directly to Clark's room. When the judge asked hospital personnel to bring up the pool representatives, an MGH physician in charge of the unit ob-

---

[2]The allegations of the complaint are all phrased in terms of "information and belief."

jected and expressed concern that the media representatives and equipment might interfere with the care of other patients. The judge then arraigned Clark without the pool representatives in attendance. Two weeks later, the plaintiffs commenced this action. The single justice concluded that the issue was moot and there was no actual controversy. We agree.

2. *The single justice correctly declared that the issue was moot and there was no actual controversy.* The complaint fails to satisfy the requirement that there be an "actual controversy," that is, "a real dispute . . . where the circumstances . . . indicate that, unless a determination is had, subsequent litigation as to the identical subject matter will ensue." *Boston* v. *Keene Corp.*, 406 Mass. 301, 304 (1989), quoting *Hogan* v. *Hogan*, 320 Mass. 658, 662 (1947). Declaratory judgment, in other words, "is a vehicle for resolving actual, not hypothetical, controversies." *Quincy City Hosp.* v. *Rate Setting Comm'n*, 406 Mass. 431, 439 (1990). We do not agree with the plaintiffs' assertion that "the access issue presented by this case will inevitably arise again." Whether the public may be excluded from future arraignments is highly speculative, and, under G. L. c. 231A, § 1, "[c]onclusory allegations as to official duties or potential future conflicts will not do . . . ." *Penal Insts. Comm'r for Suffolk County* v. *Commissioner of Correction*, 382 Mass. 527, 531 (1981).

At the time the Herald and WBZ filed their complaint, Clark had been arraigned. Later judicial proceedings in the Superior Court were open to the public. It is the general rule that courts decide only actual controversies. We follow that rule, and normally do not decide moot cases. *Monteiro* v. *Selectmen of Falmouth*, 328 Mass. 391, 392-393 (1952). *Sullivan* v. *Secretary of the Commonwealth*, 233 Mass. 543, 546 (1919). The issue before the single justice was moot. Although there was no error in the declaration entered by the single justice, we take this opportunity to reiterate the principles which govern the closure of judicial proceedings.

421 Mass. 502                                      505

Boston Herald, Inc. v. Superior Court Dep't of the Trial Court.

3. *Public access.* Originally, the constitutional right to a public trial belonged solely to the defendant. See, e.g., *Gannett Co.* v. *DePasquale*, 443 U.S. 368, 379-380 (1979). In *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555, 575-577 (1980), the Supreme Court held that the First Amendment to the United States Constitution guarantees to the public a right to attend criminal trials. In subsequent decisions, the Court has held that the public's right of access extends to other judicial proceedings, such as the voir dire examination of potential jurors, *Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501, 510-511 (1984) (*Press-Enterprise I*), and pretrial probable cause hearings. *El Vocero de P.R.* v. *Puerto Rico*, 508 U.S. 147, 150 (1993); *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1, 13 (1986) (*Press-Enterprise II*).[3]

The media's claim of access derives entirely from the public's right of access. The media have neither a greater nor a lesser right to be present than any other member of the public.[4] See *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 609 (1978); *United States* v. *Northrop Corp.*, 746 F. Supp. 1002, 1003 (C.D. Cal. 1990); *State ex rel. Repository* v. *Unger*, 28 Ohio St. 3d 418, 420 (1986), and cases cited. See also *Press-Enterprise II, supra* at 10-13 (suit brought by newspaper publisher analyzed in terms of public's right of access); *Press-Enterprise I, supra* at 508-510 (same).

Generally, public access to judicial proceedings may not be abridged absent "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise I,*

---

[3]"There is nothing in the Constitution of this Commonwealth corresponding to the right to a 'public trial' expressly granted by the Sixth Amendment to the Constitution of the United States . . . ." *Commonwealth* v. *Marshall*, 356 Mass. 432, 434 (1969). However, we have repeatedly "acknowledge[d] and. . . affirm[ed] with emphasis . . . the 'general principle of publicity.' " *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 546 (1977).

[4]The plaintiffs' requests for declarations did not accurately reflect the fact that the right of access belongs to the public.

*supra* at 510. Closure may occur if the following four requirements are met: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced,[5] [2] the closure must be no broader than necessary to protect that interest, [3] [the judge] must consider reasonable alternatives to closing the proceeding, and [4] [the judge] must make findings adequate to support the closure." *Commonwealth* v. *Martin*, 417 Mass. 187, 194 (1994), quoting *Waller* v. *Georgia*, 467 U.S. 39, 48 (1984). Further, the findings must be particularized and supported by the record. *Martin, supra* at 195. Accord *Press-Enterprise II, supra* at 13-14; *United States* v. *Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993).

The right of public access applies equally to traditional and nontraditional settings. See *Commonwealth* v. *DeBrosky*, 363 Mass. 718, 722 (1973) (testimony taken in a hospital auditorium proper where "the public, including the press, had reason to believe it had a right of access").[6] Even in nontraditional settings, the above requirements must be met. Any curtailment of public access to judicial proceed-

---

[5]The right of free access "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information," *Waller* v. *Georgia*, 467 U.S. 39, 45 (1984), or the interests of victims, *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 608 (1982), or jurors, *Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501, 511-512 (1984), or persons not before the court whose interests also are potentially threatened. The closure in those circumstances must be limited to those portions of the proceedings that jeopardize the interests advanced. See *Waller, supra* at 48-49.

[6]See *Commonwealth* v. *Handren*, 261 Mass. 294 (1927); *Lewis* v. *Peyton*, 352 F.2d 791 (4th Cir. 1965) (defendant's constitutional right to a public trial was violated where bedridden complainant testified from her sickbed and the public was excluded from the bedroom); *Commonwealth* v. *Trinkle*, 279 Pa. 564 (1924) (defendant's right under the Sixth Amendment to the United States Constitution to a public trial not violated by taking of testimony in witness's home, where some newspaper reporters and members of the general public were able to crowd into the room); *Jones* v. *Peyton*, 208 Va. 378 (1967) (defendant's constitutional right to public trial violated by trial conducted in judge's chambers).

ings, whether civil[7] or criminal, is a very serious matter. The judge must make every effort to arrive at a reasonable alternative to closure. For example, in the instant case, the judge, after hearing, might well have determined that the pool reporter alone could have accompanied him into the intensive care unit.[8] Alternatively, the judge, after hearing, could have concluded that the danger to other patients in the intensive care unit was so substantial that closure of the limited proceeding in the intensive care unit was the only solution which would not jeopardize the interests of other patients. See *Waller, supra* at 48.

In sum, prior to closing a judicial proceeding, or any portion thereof, to the public, the judge must consider reasonable alternatives and must tailor any order of closure as narrowly as possible.

*Declaration of the single justice affirmed.*

---

[7]"[I]n some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases." *Gannett Co.* v. *DePasquale,* 443 U.S. 368, 386-387 n.15 (1979). The Supreme Court has not yet said whether the First Amendment protects public access to civil trials. However, free access to civil trials is well established under the common law. *Id.*

[8]By contrast, currently there is no Federal constitutional right to broadcast, photograph, or record any judicial proceeding or portion thereof. See, e.g., *Conway* v. *United States,* 852 F.2d 187, 188 (6th Cir.), cert. denied, 488 U.S. 943 (1988); *United States* v. *Hastings,* 695 F.2d 1278 (11th Cir.), cert. denied sub nom. *Post-Newsweek Stations, Fla., Inc.* v. *United States,* 461 U.S. 931 (1983). The United States Judicial Conference recently refused to amend Fed. R. Crim. P. 53, which bans photography or broadcast of criminal cases. Reske, No More Cameras in the Federal Courts, 80 A.B.A.J. 28 (Nov. 1994). Under S.J.C. Rule 3:09, Canon 3 (A) (7) (a), as amended, 387 Mass. 1218 (1983), the decision to exclude electronic media "if it appears that such coverage will create a substantial likelihood of harm to any person or other serious harmful consequence" is within the broad discretion of the judge. *Commonwealth* v. *Cordeiro,* 401 Mass. 843, 847 (1988). *Commonwealth v. Cross,* 33 Mass. App. Ct. 761, 762 (1992).