Fremont-Smith, J.
The plaintiff, Local Division 589, Amalgamated Transit Union, AFL-CIO (“Local 589”) brought this action against the defendant, Massachusetts Bay Transportation Authority (“MBTA”) and defendant parties-in-interest M-Track Enterprises, Inc. (“M-Track”) and Walsh Construction Company of Illinois (“Walsh”) seeking a declaration that the Privatization Act, M.G.L.c. 7, §§52-56, which provides procedures to which an agency must adhere before awarding a contract to a nongovernmental entity, was violated as to two specific contracts, the Blue Line project, No. S9CN07, and the Red Line project, No. T6CN02, awarded by the MBTA to Walsh and M-Track, respectively.[1] A request for preliminary injunctive relief to prevent performance of the contracts was denied by the court. (O’Toole, J.) Thereafter, Local 589 and the MBTA filed cross motions for summary judgment as to the Blue Line Contract claims. On May 24, 1996, the court (Rouse, J.) allowed the MBTA’s cross motion for summary judgment and dismissed that portion of the Complaint pertaining to the Blue Line project on the ground that the Blue Line contract had been awarded before the effective date of M.G.L.c. 7, §§52-56. Defendant MBTA and defendant parly in interest M-Track now move for summary judgment pursuant to Mass.R.Civ.P. 56 as to the Savin Hill Flyover/Anderson Bridge Rehabilitation Contract (“Red Line project”). After hearing and considering the submissions of both parties, the defendants’ motions for summary judgment are ALLOWED.[2]
BACKGROUND
On December 16, 1993, M.G.L.c. 7, §§52-56 (“the Privatization Act”) became effective. The Act is designed to ensure that state agencies do not execute private contracts for work that could be performed by state employees at a lower cost, and accordingly, requires that whenever a contract involves services that are “substantially similar to or in lieu of’ services performed by regular agency employees, the agency may not award such a contract unless it has first determined that such a contract would be more cost effective than having the work done by state employees.
In early January, 1994, the MBTA solicited bids for modernization of certain sections of the Red Line, a portion of which involved the repair, removal and replacement of track, ties and ballast around the Savin Hill Flyover/Anderson Bridge (“Red Line project”). The MBTA awarded the approximately twelve million dollar project to the low bidder, M-Track, and work was completed on or about July 21, 1995.
Local 589 argues that the track work involved in the Red Line project is substantially similar to work Local 589 members have done in the past,[3] and seeks a declaration that the Act was violated so that the MBTA/M-Track contract is illegal. The MBTA, on the other hand, contends that any question concerning the applicability of the Act and the legality of the Red Line contract is now moot, the contract having been completed. The MBTA further argues that the Privatization Act does not apply to the Red Line project because the work performed under the contract involved new technologies and therefore was not substantially similar to work performed by Local 589 employees. Finally, the MBTA argues that to apply the Privatization Act to the Red Line contract would be inconsistent with M.G.L.c. 30, §39M, which governs public bidding on public works projects like the Red Line project.[4]
DISCUSSION
This court should grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, *600 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and move assertions of disputed facts . . .” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The nonmoving party’s failure to prove an essential element of its case renders all other facts immaterial" and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Vague and general allegations of expected proof are not enough to defeat a summary judgment motion. Cherella v. Phoenix Technologies, Ltd., 32 Mass.App.Ct. 919, 920 (1992).
Although the MBTA argues that there is no genuine issue of material fact, there is a dispute of fact as to whether the track work done pursuant to the Red Line project was substantially similar to work previously performed by Local 589 members. Although it is undisputed that members of Local 589 have performed major track work in at least five contracts since 1987, it is disputed whether that track work was substantially similar to the type of work called for by the Red Line project. See Riley v. Presnell, 409 Mass. 239, 244 (1991) (court should not, on a Rule 56 motion, weigh credibility or make findings of fact). Nevertheless, this court ALLOWS defendant MBTA’s and defendant party in interest M-Track’s motions for summary judgment on the grounds that the controversy before the court is moot. “Ordinarily, litigation is considered moot when the parly who claimed to be aggrieved ceases to have a personal stake in its outcome.” Blake v. Massachusetts Parole Bd., 369 Mass. 701, 703 (1976). In this case, it is not disputed that work on the Red Line project at issue was completed on or about July 21, 1995. Local 589, however, argues that the case presents a question “capable of repetition, yet evading review,” and is, as such, not moot. Stokes v. Superintendent, Massachusetts Correctional Institution, Walpole, 389 Mass. 883, 887 (1983) (citations omitted). This is not, however, an issue that will “inevitably rise again,” or where “subsequent litigation as to the identical subject matter will ensue.” Boston Herald v. Superior Court Dep’t. of the Trial Court, 421 Mass. 502, 504 (1995). As the parties admitted at the hearing, each contract is somewhat unique as to the particular work and skills required, so that the issue of “substantial similarity” is sui generis.[5] Accordingly, the injunc-tive relief and declaratory judgment sought here was rendered moot by the completion of the Red Line project. As to defendant party-in-interest M-Track’s motion for summary judgment, the court allows the motion for the additional reason that Local 589 is not entitled to any relief against M-Track. See Paul Sardella Construction Co. v. Braintree Housing Authority, 371 Mass. 235, 243 (1976) (contractor which was wrongfully awarded contract is not liable to disfavored contractor even though the awarding authority is liable).
ORDER
For the reasons discussed above, it is hereby ORDERED that the defendants’ motions for summary judgment are ALLOWED.

At no time did Local 589 move for monetary damages, and the deadline for any amendments to the complaint has long passed.

Although defendant MBTA and defendant party-in-interest, M-Track moved separately, their motions are treated together for the purposes of this ORDER.

In support of this assertion, Local 589 has submitted evidence that its members have performed similar work on at least five major construction projects since 1987.

The Privatization Act, by its terms, does not apply where such application would be inconsistent with M.G.L.c. 30, §39M.

Here, the work involved much more than normal track repair or maintenance, but also required the installation of a so-called Cologne Egg Track Support System, construction of temporary elevated rail beds, asbestos abatement, installation of electric current-carrying third rails, signalling systems and a control-cabled rail system. There was no showing that Local 589 performed such work in the past or would likely be called upon to do such work in the future.