[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from a declaratory ruling of the State Ethics Commission. . . . ("Commission") issued pursuant to Connecticut General Statutes § 4-176. The plaintiffs, consisting of three individuals and two limited liability companies have been granted permission to use fictitious names pursuant to an ex parte order signed by Judge Robert McWeeny. Presently before this court are plaintiffs' motions for a stay and for sealing the file. The Hartford Courant moved to intervene for the limited purpose of opposing the motion to seal the file, and also moved to vacate the court's order granting plaintiffs' permission to use fictitious names. In open court, the court granted The Hartford Courant's
motion to intervene for the purposes indicated. It heard argument on all three motions and allowed the parties to file post-argument briefs.
The facts are as follows: The Commission commenced an investigation, pursuant to Connecticut General Statutes § 1-93, of the individual plaintiffs for possible violation of the Code of Ethics for Lobbyists (§§ 1-91 et seq., hereinafter Code). Those investigations were assigned Commission docket numbers 2000-1, 2000-2, and 2000-3. On November 24, 1999, before the start of the investigation, the plaintiffs petitioned the Commission for a declaratory ruling, pursuant to § 4-176, CT Page 13224 based upon certain hypothetical facts, supplemented by exhibits. The Commission granted the petition for a declaratory ruling, ordered that a hearing be conducted pursuant to § 4-176(g), and further ordered that the petition be consolidated with Commission docket numbers 2000-1, 2000-2 and 2000-3. The Commission held a hearing and testimony was adduced. The hypothetical facts contained in plaintiffs' petition for a ruling, the exhibits, and the testimony at the hearing revealed, in essence, the following: The individual plaintiffs, John Doe 1, 2 and 3 are members of ABC limited liability company. ABC, LLC entered into an agreement with IAI Ventures, Inc. to assist IAI Ventures, Inc. to identify large financial institutions as potential members of IAI World Fund. In 1997, plaintiff John Doe 1, on behalf of ABC, LLC, inquired of the then state treasurer if his office was interested in investing in venture capital companies and when the treasurer said he was, plaintiff John Doe 1 set up a meeting between the treasurer and IAI Ventures, Inc. ABC, LLC entered into a contingent fee contract with IAI Ventures, Inc. Negotiations, in which the individual plaintiffs did not participate, led to the state investing in the IAI Ventures, Inc. fund.
Another plaintiff, DEF limited liability company, entered into a contract with GHI, LLC to identify investment opportunities. The state treasurer purchased securities from GHI, LLC in a transaction in which individual plaintiffs John Doe 1 and 3 did not participate in the negotiations.
The plaintiffs, individuals and limited liability companies, obtained opinions from experts in ethics and law before engaging in the activities described in the hypothetical facts that such activities did not constitute lobbying within the meaning of C.G.S. § 1-91(k) and did not amount to a knowing violation of C.G.S. § 1-99(a).
The six questions the plaintiffs propounded to the Commission for a declaratory ruling invoked the meaning of §§ 1-99(a), 1-97(b) and1-91(k).
Section 1-99(a) provides in pertinent part:
 The Commission may impose a civil penalty on any person who knowingly enters into a contingent fee agreement in violation of subsection (b) of section 1-97. . . . The civil penalty shall be equal to the amount of compensation which the registrant was required to be paid under the agreement. (emphasis added)
Section 1-97(b) provides: CT Page 13225
 (b) No person shall be employed as a lobbyist for compensation which is contingent upon the outcome of any administrative or legislative action.
Section 1-91(k) provides:
 "`Lobbying' means communicating directly or soliciting others to communicate with any official or his staff in the legislative or executive branch of government . . . for the purpose of influencing any legislative or administrative action. . . ."
Section 1-91(a) provides:
 "Administrative action means any action . . . of an executive agency of the state . . . regarding a contract. . . ."
Regulations of State Agencies §§ 1-92-42 and 1-92-42a(e) provide for exceptions from the definition of lobbying for "routine requests for information" (1-92-42) and "ordinary and customary communications . . . incident to the performance of a contract" or "contacts . . . for informational purposes." (1-92-42a(e).)
Specifically, plaintiffs' inquiries for which they sought a ruling fell into three categories: (1) whether the adverb "knowingly" in § 1-99a modifies only entering into a contingent fee agreement or also doing so in violation of § 1-97(b); (2) whether the civil penalty provided for in § 1-99(a) can be imposed on one not a party to a contingent fee agreement; and (3) whether the person entering into the contingent fee agreement must know the services to be rendered under the agreement are lobbying services, as defined by § 1-91(k).
The Commission ruled as follows: (1) the word "knowingly" in §1-99(a) modifies only the phrase "enters into a contingent fee arrangement" and does not modify the phrase "in violation of subsection (b) of § 1-97"; (2) when limited liability companies enter into a contingent fee agreement, the individuals comprising those companies can be held subject to § 1-99(a); (3) § 1-99(a) does not require that a person know his services constitute lobbying.
 I. APPLICATION FOR STAY
Plaintiffs' application for stay is in two parts: (1) a stay of the enforcement of the Commission's declaratory ruling; (2) a stay of the CT Page 13226 Commission's ongoing probable cause investigation of the individual plaintiffs for possible violations of the Code.
With respect to a stay of enforcement of an agency decision pursuant to § 4-183(f), the court properly considers: (1) a likelihood the appellant will prevail, (2) irreparability of injury to be suffered from an immediate implementation of the agency order, (3) the effect of the stay upon other parties to the proceedings, and (4) the public interest involved. Griffin Hospital v. Commission on Hospitals and Health Care,196 Conn. 451, 457-59 (1985). In weighing these factors, the court is entitled to apply a "balancing of the equities" test. Id.
With respect to the factor of the probability of the plaintiffs' success on this appeal, the Commission has construed certain sections of the Code. Statutory interpretations are matters of law which a court must decide, while giving deference to an agency's construction. ConnecticutState Board of Labor Relations v. Board of Education, 177 Conn. 68, 74
(1979). They are peculiarly within a court's expertise and judgment. This court has examined the Commission's statutory interpretations and concludes there is a reasonable probability the plaintiffs will prevail in this appeal on some of these interpretations. It thus concludes the first factor for granting a stay is met.
As to the factor of irreparable harm, the plaintiffs claim that if the declaratory rulings of the Commission are applied by the Commission in finding probable cause that the individual plaintiffs have violated the Code, plaintiffs will be injured because a finding of probable cause will result in the public disclosure of the investigation. This court finds this argument to be persuasive, and as a consequence the second factor of the stay has been established.
These two factors having been met, the court determines on equitable considerations that a stay of enforcement of the declaratory ruling should be granted. This means that as long as facts found in the probable cause investigation by the Commission are substantially the same as the hypothetical facts presented for the declaratory ruling, the Commission is stayed from using its declaratory ruling as the basis for a finding of probable cause.
With respect to the plaintiffs' application for a stay of the Commission's probable cause investigation for violations of the Code, § 4-183(f) clearly does not apply. That section is limited to a stay of the enforcement of an agency decision. The plaintiffs are really asking for a preliminary injunction against the continuation of the probable cause investigation. In adjusting the rights of parties during the pendency of litigation until a final determination on the merits, CT Page 13227 courts apply essentially the same factors as in granting a stay. ParkCity Hospital v. Commission on Hospitals and Health Care, 210 Conn. 697,700-01 (1989).
This court can make no determination as to whether or not the Commission will find probable cause that the individual plaintiffs have violated the Code. The investigation may reveal facts that differ from the hypothetical facts on the basis of which the declaratory ruling was made. Thus, plaintiffs have failed to establish the requisite likelihood they will prevail.
The plaintiff's claim irreparable harm because they will go to the expense of defending themselves in the probable cause investigation and if probable cause is found, their reputations may be effected. Our Appellate Court has noted in Johnson v. Department of Public Health,48 Conn. App. 102, 114 (1998), quoting the United States Supreme Court inFederal Trade Commission v. Standard Oil Co. of California, 449 U.S. 232,244 (1980), "`the expense and annoyance of litigation is part of the social burden of living under the government.'" A plaintiff's claim of damage to his professional standing and reputation as the basis for a claim of irreparable injury in an administrative inquiry into his professional conduct was rejected by the Supreme Court in Pet v.Department of Health Services, 207 Conn. 346, 373 (1988). As Judge John Maloney noted in Farrell v. State Ethics Commission,9 Conn.L.Rptr. 272, 273-74 (1993): "The court agrees with the defendant Commission that the essential basis of the plaintiff's claim of irreparable harm — potential unjustified damage to reputation — is too broad and too easily alleged. If permitted as the basis of appeal from an interlocutory decision, it could be claimed in every case and would effectively derail the enforcement of the code of ethics."
The plaintiffs are already protected from the application of the declaratory ruling in the Commission's probable cause investigation to the extent that the facts revealed are substantially the same as the hypothetical facts on the basis of which the declaratory ruling was made. But since facts disclosed by the probable cause investigation may differ from those hypothetical facts, the probable cause investigation must go forward.
Another factor to be considered by the court in this application for what amounts to one for a preliminary injunction is that of the public interest. The Code establishes a strong public policy in favor of investigating and prosecuting violations of that code. Clearly, enjoining the continuation of the probable cause investigation would run counter to the public interest. CT Page 13228
Based on these considerations plaintiffs' application to enjoin the probable cause investigation by the Commission is denied.
 II. MOTION FOR SEALING THE FILE
The plaintiffs move to seal the file of this case, including affidavits, documents or other materials on file with this court, pursuant to Practice Book § 11-20, on the ground that § 1-93a
provides for confidentiality of Commission investigations as to possible violation of the Code until the Commission makes a finding of probable cause, and, here, the Commission has consolidated the plaintiffs' petition for a declaratory ruling with the probable cause investigations in docket numbers 2000-1, 2000-2 and 2000-3.
Section 11-20 of the Connecticut Practice Book in subsection (a) states the general public policy that the court shall not order court proceedings or court files be sealed. Subsection (b) provides that a court, on proper motion, may seal a file "if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in attending such proceedings or viewing such materials. Any such order shall be no broader than necessary to protect such overriding interest." Subsection (c) provides that if the court issues an order it shall "on the record in open court, articulate the overriding interest being protected and shall specify its findings underlying such order."
Although the Commission has consolidated for administrative purposes, the petition for declaratory ruling with the probable cause investigations, this court, in applying Practice Book § 11-20, can properly bifurcate them. The probable cause investigation clearly is entitled to confidentiality in accordance with § 1-93 a. But plaintiffs' motion for a declaratory ruling by an administrative agency, pursuant to § 4-176, by its very nature is a public matter because it seeks interpretations of our state statutes which may have general application to a similar set of facts.
The plaintiffs themselves initiated the request for a declaratory ruling. Having not obtained the ruling they wished for, they have appealed to this court. Clearly, if this court were to sustain their appeal and determine that the Commission had improperly interpreted our statutes, the plaintiffs would not want this court's decision to remain secret. Confidentiality cannot be based on the outcome of this court's decision on the merits of this appeal.
Our courts have held that sealing court records implicates First Amendment rights, Wendt v. Wendt, 45 Conn. Sup. 208, 210 (1996) aff'd, CT Page 1322959 Conn. App. 656 (2000). It should be ordered only on "rare and exceptional" circumstances, and there must be demonstrated "that public and press access is likely to prejudice the guarantee of a fair trial absent such extreme measures." United States v. Cojab, 996 F.2d 1404,1408 (2nd Cir. 1993).
Openness of court proceedings and accessibility of court files is essential to maintaining public confidence in our judicial process. As stated in Hartford v. Chase, 733 F. Sup. 533, 535 (D.Conn. 1990), rev'd on other grounds 942 F.2d 130 (2nd Cir. 1991), quoted in Wendt v. Wendt, supra, 45 Conn. Sup. 211:
 The adjudicative process . . . is a function of the law which is derived from the community's delegation to the courts and to the legislature of the power to establish and enforce the substance of the law. That process is a matter of public concern as the enforcement of the law has a broader impact than just the decision in the dispute of particular parties. So also the community has a real concern as to the process by which the law is justly enforced. The public's concern is accommodated by the openness of the court's record. By access to the record, the public best ensures that the authority it has delegated to the courts and the substantive law enacted under the authority delegated by the community are exercised and enforced consistent with the charge to the court implicit in the delegation of authority.
Section 11-40 of the Connecticut Practice Book enjoins this court to issue a sealing order only when "necessary to preserve an interest which is determined to override the public's interest."
Here, the plaintiffs seek the same confidentiality with respect to this court file dealing with the Commission's declaratory ruling that it is entitled to concerning the probable cause investigation. The court can accommodate that request by ordering that the probable cause complaint before the Commission and any evidence derived from the probable cause investigation be redacted from the record on appeal to this court. In that way the policy of confidentiality in § 1-93a is preserved. All pleadings and documents in the court file pertaining to the declaratory judgment ruling, including those portions of the administrative record that relate to the declaratory ruling, should be open to the public in order to serve the overriding interest of public accessibility to court records. Consequently, plaintiffs' motion to seal this file is denied, except the complaint and material relating to the probable cause CT Page 13230 investigation shall be redacted or filed under seal in this court.
 III. MOTION TO VACATE THE ORDER GRANTING PLAINTIFFS' PERMISSION TO USE FICTITIOUS NAMES
Based upon an ex parte petition, Judge McWeeny granted, ex parte, plaintiffs' motion to allow the plaintiffs to proceed by the use of fictitious names in this proceeding. The Hartford Courant moves that that order be vacated.
The right to proceed in a trial by the use of a fictitious name implicates the First Amendment and the principle of openness of the courts. See J. Steinman, "Public Trial, Pseudonymous Parties; When should litigants be permitted to keep their identities confidential?" Hastings, L.J. 3-18 (1985). Such a right ought to be "granted only in the rare case where the nature of the issue litigated and the interest of the parties demand it and no harm can be done to the public interest." Buxton v.Ullman, 147 Conn. 48, 60 (1959). As stated in Doe v. Diocese Corp.,43 Conn. Sup. 152, 158 (1994): "All this means that a strong showing must be made before a party should be allowed to proceed anonymously. It is not a right the parties have as against each other; the court must determine the question as against the demands of the public interest." Permission to proceed anonymously may be granted in situations involving social stigmatization, real danger of physical harm, or risk of an unfair trial. Id. "That the plaintiff may suffer some embarrassment or economic harm is not enough. There must be a strong social interest in concealing the identity of the plaintiff" Doe v. Rostker, 89 F.R.D. 158, 162
(N.D.Cal. 1981).
Here, the plaintiffs are entitled to confidentiality during the probable cause investigation by the Commission and this decision assures them of that confidentiality. However, when they initiated the petition for a declaratory ruling and then appealed that ruling to this court, they are not covered by the protection of § 1-93a. By proceeding in this public manner, they have lost their right to anonymity. They have shown no strong social interest for proceeding anonymously. Consequently, the ex parte order of this court permitting the plaintiffs to use fictitious names is vacated.
To summarize, (1) plaintiffs' motion to stay the enforcement of the Commission s declaratory ruling is granted; (2) plaintiffs' motion to stay the Commission's probable cause investigation is denied; (3) plaintiffs' motion to seal this court's file is denied, except the complaint filed with the Commission and material pertaining to the probable cause investigation may be redacted from the file of this case; (4) the ex parte order of this court permitting plaintiff to use CT Page 13231 fictitious names is vacated.
Robert Satter Judge Trial Referee